_8/10/65_

_Carolyn T. Batson_
Notary Public in and for
_Davidson_ County, State of _Tennessee_
Residing at _712 Desmond Dr._

[A3609]

CONTINENTAL-WIRT ELECTRONICS
CORPORATION
Waterman Electronic Tube Corporation,
v.
CORNING GLASS WORKS, INC.
Civ. A. No. 70-1323.

United States District Court,
E. D. Pennsylvania.

Jan. 26, 1971.

As amended Feb. 10, 1971.

John T. Clary, Philadelphia, Pa., for plaintiffs.

Henry Kolowrat, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

Presently before the court is the defendant's motion for summary judgment pursuant to rule 56(b), Fed.R.Civ.P. This is an antitrust treble damage suit in which the plaintiff, Waterman Electronic Tube Corporation ("Waterman"), is seeking redress for damages sustained as the result of an alleged conspiracy between defendant Corning Glass Works, Inc. ("Corning") and Lancaster Glass Corporation ("Lancaster"). The motion for summary judgment is made on the ground that the applicable four year statute of limitations has barred the right to sue. 15 U.S.C. § 15b.

A brief statement of the facts is necessary to put the legal questions in their proper context. The complaint alleges that Waterman was a manufacturer of cathode ray tubes, a product which consists, very simply, of an electronic unit capable of emitting a beam of electrons and a glass bulb which encloses the entire unit. The glass bulbs come in two basic types, blown face bulbs and pressed face bulbs. Virtually all production of glass bulbs for cathode ray tubes manufactured in the United States is accounted for by Corning and Lancaster. Waterman began buying bulbs principally from Lancaster after it started doing business in 1962.

Prior to 1963, prices were very nearly identical for Lancaster and Corning bulbs, but beginning in late 1963, the bulb prices of the two companies began to vary. Starting in the summer of 1965 Corning announced drastic price changes, especially for its line of pressed face bulbs where prices were raised dramatically. Likewise, Lancaster made drastic price revisions, greatly increasing the price of pressed face bulbs, but keeping the price below that charged by Corning, and withdrawing the prices for blown face bulbs altogether. As a result of these pricing moves, Corning effectively went out of pressed face bulb business and Lancaster went out of the blown face bulb business. On the lines retained by each company respectively, the average price was approximately 90% higher than the 1963 level.

Waterman's line of cathode ray tubes required them to use pressed face bulbs so they were forced to buy their bulbs from Lancaster or be priced out of the market. In September of 1965, Lancaster demanded payment for all outstanding orders at the new price levels despite the fact that some of these orders had been accepted without reservation of price change prior to the recent changes. The culmination of the ensuing legal dispute was that Lancaster cut off Waterman's supply of bulbs in February 1966. As a result of this termination of supply, Waterman was unable to continue in business and had to eventually sell its assets, which sale was consummated on June 13, 1966.

A second, and related set of factual allegations is also presented in the complaint. In 1961, Corning, together with Owens-Illinois and Chase Manhattan Bank (N.A.) of New York as the principal creditors, took over proportionate stock shares of Thomas Electronics, Inc.,

a small New Jersey electronics manufacturer which was beginning to produce a line of cathode ray tubes. Thomas was run by a managing group installed by Chase Manhattan Bank (N.A.), and Corning did not intervene in the direct operations of the company although it did retain representation on the Thomas board of directors. Lancaster established a line of credit for Thomas and with the combined backing of both Corning and Lancaster, Thomas became a successful business operation in the manufacture of cathode ray tubes. It is further alleged that Thomas obtained special price concessions on bulbs from Lancaster with the result that Thomas was able to acquire orders unavailable to Waterman.

This suit was filed on May 18, 1970, alleging two basic types of wrongful conduct on the part of Corning. First, Corning is charged with removing itself from the pressed face bulb market by entering into various pricing arrangements in conspiracy with Lancaster. Second, Corning is charged with buying an interest in Thomas and, in an effort to realize profits, conspiring with Lancaster to put Thomas in a superior competitive position to Waterman. Defendants have filed a motion for summary judgment on the basis that any alleged cause of action arose more than four years prior to the filing of the complaint and is thus barred by the statute of limitations.

A claim purporting to state an antitrust violation will be "barred unless commenced within four years after the cause of action accrued". 15 U.S.C. § 15b. The precise issue which the court must determine is the point at which the alleged cause of action accrued. Defendant supports its motion with that line of cases which hold that the right of action for civil conspiracy under the antitrust laws accrues at the commission of the last overt act alleged to have caused damage or injury. Garelick v. Goerlich's, Inc., 323 F.2d 854 (6th Cir. 1963); Manok v. Southeast District Bowling Ass'n, 306 F.Supp. 1215 (C.D. Cal.1969); Poster Exchange, Inc. v. National Screen Service Corp., 306 F.Supp. 491 (N.D.Ga.1969). In that respect, the last overt act arising out of the alleged conspiracy which damaged Waterman was when Lancaster cut off Waterman's supply of bulbs in February of 1966. The only allegation which specifically cited Corning's role in causing damage to Waterman was that it conspired with Lancaster "sometime prior to September 1965" to fix the price of the bulbs and to put Lancaster in a monopoly position. Since there are no allegations that Corning did anything to Waterman after September 1965 or that Lancaster did anything to Waterman after February 1966, the suit was filed more than four years after the "last overt act", and is barred by the statute of limitations.

Plaintiff responds to this argument by claiming that the conduct of Corning was of a continuing nature which culminated in complete success by removing Waterman as a competitor in the cathode ray tube business on June 13, 1966, when the assets of the corporation were sold. In support of its claim, plaintiff cites the general rule that the statute of limitations in respect to a private right of action under the antitrust acts begins to run when the cause of action arises, and the cause of action arises when the damage occurs. Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725 (8th Cir. 1964); Schenley Ind. v. N. J. Wine & Spirit Wholesalers Ass'n, 272 F.Supp. 872 (D.N.J.1967); Winkler-Koch Engineering Co. v. Universal Oil Products Co., 100 F.Supp. 15 (S.D.N.Y. 1951). From this plaintiff argues that the statute began to run when the loss was sustained, which was when the assets were sold on June 13, 1966. Since this action was instituted on May 18, 1970, the damages fall within the four year period of limitations.

It is the view of this court that both "general rules" cited by opposing coun-

sel can be reconciled. Plaintiff agrees that it can only claim damages which occurred within the four year period preceding the institution of this action. However, the court disagrees with plaintiff's contention that the sale of the business on June 13, 1966 was the damage which started the statute of limitations running. The injury occurred when Waterman was unable to replenish its supply of bulbs. It is possible that the final sale of the remaining assets of a corporation may be concluded years after the event took place which so damaged the business that it became unprofitable or totally unable to continue in production. When the assets finally are sold, and the sale price is much lower than the estimated worth of the corporation at some prior time, that low price is merely one element to be taken into account when measuring the damages but it is not the damage to the corporation in and of itself. Whether the sale of Waterman's assets was consummated in March of 1966 or not until today, the sale price would reflect the earlier injury to the business. A manufacturer of cathode ray tubes that cannot obtain a supply of glass bulbs is not worth what it was as a going business, whether the sale takes place immediately after the termination of supply or not until some period of time thereafter. The injury to the corporation occurred when Lancaster refused to supply Waterman with any more bulbs and Waterman was unable to find another practical source of supply. That is when the cause of action accrued and since the complaint was not filed within four years of that date, this action is barred by the statute of limitations. The defendant's motion for summary judgment will therefore be granted.[1]

[1]. It should be noted that the granting of defendant's motion for summary judgment does not leave plaintiff without any remedy for injuries alleged to have occurred by reason of a conspiracy between Corning and Lancaster. There is presently pending before another member of this court Civil Action No. 41465, filed on November 1, 1966, in which the allegations substantially encompass the same factual circumstances alleged in this case. In Civil Action No. 41465, Lancaster is the named defendant and Corning is named as a co-conspirator.