**CONTINENTAL–WIRT ELECTRONICS CORPORATION, Appellant in No. 71–1275, and Waterman Electronic Tube Corporation**

v.

**LANCASTER GLASS CORPORATION and Corning Glass Works, Inc.**

Appeal of **WATERMAN ELECTRONIC TUBE CORPORATION, in No. 71–1276.**

**Nos. 71–1275, 71–1276.**

United States Court of Appeals, Third Circuit.

Submitted March 10, 1972.

Decided April 12, 1972.

As Amended May 9, 1972.

Andrew F. Mimnaugh, John T. Clary, Philadelphia, Pa., for appellants.

Henry Kolowrat, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, VAN DUSEN and ALDISERT,[1] Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

This appeal from an order granting defendant's motion for summary judgment on the ground that the applicable four-year statute of limitations, 15 U.S. C. § 15b, barred this private antitrust action, requires us to examine the parameters of that statute in light of the decision in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 339, 91 S. Ct. 795, 28 L.Ed.2d 77 (1971).

From 1962 to 1966, Waterman, a wholly-owned subsidiary of Continental, engaged solely in the manufacture of cathode ray tubes. The outer portion of these tubes consists of a glass bulb which encloses the entire unit. The bulbs are of two basic types, blown face bulbs and pressed face bulbs. Defendants Lancaster and Corning account for virtually all production of cathode ray tube bulbs in the United States. Waterman alleges that the defendants entered into a price-fixing conspiracy "sometime prior to September 1965," and that as a result of this conspiracy, Corning announced drastic price increases, with Lancaster following suit shortly thereafter. As a result of these pricing maneuvers,[2] Corning effectively went out of the pressed face bulb business and Lancaster went out of the blown face bulb business. Because Waterman required pressed face bulbs in the manufacture of its cathode ray tubes, it was forced to purchase its bulbs from Lancaster.

Waterman alleges that in September 1965, Lancaster demanded payment for all outstanding bulb orders at the new price levels despite the fact that Waterman placed some of these orders prior to the price increase, and that Lancaster accepted some of these orders without reservation as to price changes. When Waterman refused to accede to this payment demand, in February 1966, Lancaster cut off Waterman's bulb supply. As a result of this termination of supply, Waterman was unable to continue in business, and, on June 13, 1966, consummated a sale of all of its assets.

Waterman filed this action on May 18, 1970, alleging a conspiracy between Corning and Lancaster to enter into various pricing arrangements and the existence of a continuing conspiracy to undermine the competitive position of Waterman.[3]

Defendant filed a motion for summary judgment, arguing that because the cause of action arose more than four years before the filing of the complaint, the action is barred.[4] The district

---

1. Although Judge Aldisert was a member of the panel before which this case was initially listed for disposition, he did not participate in the ultimate decision of this case.

2. Although Lancaster made similarly drastic price revisions after Corning altered its prices, Lancaster kept the price of its pressed face bulbs below that charged by Corning and withdrew the prices for blown face bulbs altogether. Thus, Lancaster provided the lower price for pressed face bulbs whereas only Corning continued to manufacture blown face bulbs. The average price of both type bulbs in 1965, however, was approximately ninety percent higher than 1963 levels.

3. Waterman alleges that Corning purchased an interest in Thomas Electronics, Inc., a small New Jersey electronics manufacturer which was beginning production of cathode ray tubes. Waterman further alleges that Lancaster established a line of credit for Thomas and provided price concessions. Waterman contends that as a result of this aid from Corning and Lancaster, Thomas could acquire orders unavailable to Waterman and that there existed a continuing conspiracy between Lancaster and Corning to put Thomas in a superior competitive position to Waterman (see pars. 10–12 of Affidavit Contra Motion For Summary Judgment and pars. 30–35 of Complaint). On June 2, 1970, an Amended Complaint was filed, deleting Lancaster as a defendant.

4. "15 U.S.C. § 15b. Limitation of actions
Any action to enforce any cause of

court, 321 F.Supp. 981, noted that a cause of action for civil conspiracy under the antitrust laws accrues at the commission of the last overt act alleged to have caused the damage. The court found this last overt act occurred in February 1966, when Lancaster refused to supply Waterman with bulbs, and that the action was barred by the statute of limitations.

After the district court ordered that defendant's summary judgment motion be granted, the Supreme Court decided *Zenith, supra.* Although the Supreme Court noted that generally a cause of action accrues and the statute of limitations begins to run when a defendant commits an act which injures a plaintiff's business, in the context of a continuing conspiracy to violate the antitrust laws, each time a plaintiff is injured by the act of the defendant, a cause of action accrues to him to recover damages caused by that act. The Court recognized that sometimes, however, damages caused by a particular invasion may remain speculative for some time after the fact of injury. In such instances, the Court announced that "the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted." 401 U.S. at 339, 91 S.Ct. at 806.

Thus, the Court ruled in favor of Zenith, the treble damage claimant, even though the acts of the defendant occurred more than four years before Zenith asserted its claim. Because Zenith's damages were speculative within the time in which the statute permitted it to sue, the Court reasoned that Zenith should be permitted to file its action when it could compute its damages. "Otherwise future damages which could

not be proved within four years of the conduct from which they flowed would be forever incapable of recovery, contrary to the congressional purpose that private actions serve 'as a bulwark of antitrust enforcement' * * * and that the antitrust laws fully 'protect the victims of the forbidden practices as well as the public.'" 401 U.S. at 340, 91 S.Ct. at 807.

In the instant action, the district court found that the last overt act producing injury occurred more than four years prior to the filing of the suit. Normally this would act as a complete bar to recovery. However, if the district court should find that some portion of Waterman's damages were too speculative to be ascertainable at the time the overt act which produced them occurred, then those damages which became ascertainable within the four years prior to the filing of the complaint will be recoverable. See Handler, "Twenty-Fourth Annual Anti-Trust Review," 72 Cal.L.Rev. 1, 42–51 (1972). Waterman could hardly calculate, at least, that portion of its damages relating to the value of the business when it remained speculative until a sufficient time for reasonable attempts to sell the business had expired [5] or the sale of the business had been made. It was only at the time of resale, when the damages were actually suffered, that the cause of action accrued and the statute of limitations began to run. The business was sold on June 13, 1966. Because the instant action was filed on May 18, 1970, it would appear that the suit was commenced within four years after the cause of action accrued. However, application of *Zenith* to this case cannot be made without further development of the facts.

The order of the district court granting summary judgment will be vacated and the cause remanded to the district

---

action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued."

5. There is nothing we can find in the record to indicate that such time had expired during the four-month period from February 1966 to the date of sale, June 13, 1966.

court for further consideration in light of *Zenith, supra.* See United Mine Workers of America v. Railing, et al., 401 U.S. 486, 91 S.Ct. 991, 28 L.Ed.2d 272 (1971); Railing v. United Mine Workers, 445 F.2d 353 (4th Cir. 1971).