**CONTINENTAL–WIRT ELECTRONICS CORPORATION**
and
**Waterman Electronic Tube Corporation**
v.
**CORNING GLASS WORKS, INC.**
Civ. A. No. 70–1323.

United States District Court,
E. D. Pennsylvania.
Nov. 7, 1973.

John T. Clary, Andrew F. Mimnaugh, Philadelphia, Pa., for plaintiffs.

Henry Kolowrat, Dechert Price & Rhoads, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

This is a treble damage anti-trust action in which the plaintiff, Waterman Electronic Tube Corporation, ("Waterman"),[1] is seeking redress for damages sustained as the result of an alleged conspiracy between the defendant, Corning Glass Works, Inc., ("Corning") and Lancaster Glass Corporation. Presently before the Court is the defendant's Second Motion for Summary Judgment. On January 26, 1971, this Court granted the defendant's first Motion for Summary Judgment on the basis that the suit was barred by the applicable four-year statute of limitations (15 U.S.C. § 15b). On February 24, 1971, the Supreme Court decided Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), which, in effect, held that an anti-trust plaintiff may recover damages incurred during the four-year statute of limitations period as a result of acts committed before that period if, and only if, those damages would have been too speculative to permit recovery within four years after the last act giving rise to a cause of action. On appeal to the Third Circuit Court of Appeals, the case was remanded to this Court for further consideration in light of Zenith, supra. The Court of Appeals in its Opinion said:

"In the instant action, the district court found that the last overt act producing injury occurred more than four years prior to the filing of the suit. Normally, this would act as a complete bar to recovery. However, if the district court should find that some portion of Waterman's damages were too speculative to be ascertainable at the time the overt act which produced them occurred, then those damages which became ascertainable within the four years prior to the filing of the complaint will be recoverable. See Handler, 'Twenty-Fourth Annual Anti-Trust Review,' 72 Cal.L. Rev. 1, 42–51 (1972). * * * [I]t would appear that the suit was commenced within four years after the cause of action accrued. However, application of Zenith to this case cannot be made without further development of the facts." Continental-Wirt Electronics Corp., v. Lancaster Glass Corp., 459 F.2d 768, 770 (3d Cir. 1972).

Thus, what is presently before the Court is the question of the applicability of what has come to be known as the doctrine of ascertainability. In light of Zenith, this Court must determine when the damages suffered by Waterman were sufficiently precise to be susceptible of proof without speculation. Since Waterman instituted this suit on May 18, 1970, its action will be time barred as to all damages that were so ascertainable prior to May 18, 1966. For the reasons that follow, the Court must deny the defendant's motion for summary judgment.

Proper consideration of the present motion commences with an understanding of the plaintiff's position. Assuming, of course, the liability of the defendants in the first place, the plaintiff

---

1. Continental-Wirt is Waterman's parent. At the time of the alleged conspiracy, Waterman Electronic Tube Corporation was controlled by Burton and Kalman Lifson.

contends that its damages were not ascertainable prior to May 18, 1966, because the value of its business as destroyed by the defendants was unascertainable on or before that date. Recognizing that regardless of whatever other elements are ultimately to be included in the computation of its damages one of the elements will certainly be the value of its business as destroyed, the plaintiff contends the unascertainability of one element of its damages produces the unascertainability of its damages as a whole. This rationale parallels that adopted by the Court of Appeals when it said:

"Waterman could hardly calculate, at least, that portion of its damages relating to the value of the business when it remained speculative until a sufficient time for reasonable attempts to sell the business had expired [5]

[5]. There is nothing we can find in the record to indicate that such time had expired during the four month period from February, 1966, to the date of sale, June 13, 1966." *or* the sale of the business had been made. * * * Continental-Wirt Electronics Corp., *supra*, at 770 (Emphasis added).

Thus, the pivotal question of the present motion is whether the value of the plaintiff's business was ascertainable prior to May 18, 1966.

With regard to answering that question, the exhibits accompanying the present motions reveal the following: In December of 1965, fearful that the defendants might be capable of forcing Waterman out of business, the Lifson brothers placed an advertisement for the sale of the business in the Wall Street Journal.[2] At the same time, they let it be known through several friends and business acquaintances that consideration was being given to a sale of Waterman's assets.[3] Between December of

1965 and May of 1966, a few inquiries were made, but the plaintiffs received no offers.[4] During May of 1966, for reasons related to the substance of this litigation, negotiations with three prospective purchasers were intensified. On May 19, 1966, the first offer to purchase was made. It was followed by another on May 27, 1966 from the ultimate purchaser. On May 31, 1966 the final agreement of sale was executed.[5]

Upon the foregoing facts, the defendant advances the argument that the value of the plaintiff's business was ascertainable prior to May 18, 1966, because (1) the Lifson brothers had valued the business for the purpose of sale as early as December, 1965, when they commenced "testing" the market, and (2) regardless of the Lifson estimate, the business must have had a value for insurance purposes in the event of its destruction. (Thus, its value must have been ascertainable.)

The plaintiff, on the other hand, takes the position that (1) the Lifson estimate is meaningless in the absence of a market for the sale of the business and (2) that the defendant's insurance argument is meaningless in the absence of further proof. For the reasons that follow, this Court is of the opinion that the plaintiff's position is correct.

When used to mark a point in time, it is clear that the concept of ascertainability must have objective boundaries in order to be capable of application. Thus, the defendant's first argument is unacceptable because although the Lifson brothers did determine a figure at which they would consider negotiations for the sale of their business, they were not expert appraisers. Not being expert appraisers, their valuation of the business remained meaningless until the time that it drew an offer in response. Since the Lifsons

2. Supplemental Response To Defendant Corning's First Interrogatories ¶ 7(c), Plaintiff's Memorandum Contra Defendant's Second Motion for Summary Judgment, Exhibit "C".

3. Letters of Kalman and Burton Lifson, August 31, 1972, Defendant's Motion for Summary Judgment, Exhibit 5.

4. Plaintiffs' answers to defendant's interrogatories set no. 2 and request to produce, ¶ 3(d), (1), plaintiffs' memorandum contra defendant's second motion for summary judgment, Exhibit "A".

5. *Id.*

did not obtain an offer until after May 18, 1966, their efforts are no support for the defendant's present argument.

The defendant's second argument is more persuasive but suffers from a lack of proof. By arguing that the value of the plaintiff's business must have been ascertainable for insurance purposes, they say no more than that the value of the business must have been capable of valuation by an expert. Thus, the force of the argument is merely that the damages suffered by the plaintiff were *theoretically* ascertainable prior to May 18, 1966. The only merit to such an argument is that it beckons to common sense and suggests the conclusion that the plaintiff's damages were not *Un*ascertainable prior to May 18. Unfortunately, a demonstration of the logic of a potential conclusion is meaningless absent a factual basis in the record to support it. Thus, although attractive, the defendant's second argument, without more, provides no foundation upon which to enter summary judgment. Accordingly, the defendant's motion for summary judgment is denied.