**ARGUS INCORPORATED, et al., Plaintiffs,**

**v.**

**EASTMAN KODAK COMPANY, et al., Defendants.**

**No. 79 Civ. 4525.**

United States District Court, S.D. New York.

Oct. 27, 1982.

---

Marchi, Jaffe, Cohen, Crystal, Rosner & Katz, New York City, for plaintiffs; Ernest Allen Cohen, David Jaffe, David R. Taxin, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Eastman Kodak Co.; John L. Warden, Philip K. Howard, William L. Farris, Mark C. Rosenblum, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant GTE Sylvania Inc.; Stanley D. Robinson, Gerald Sobel, William Thomashower, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendant General Electric Co.; Robert B. Fiske, Jr., Guy Miller Struve, New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

Plaintiffs Argus Incorporated, Interphoto Corporation, and Sugra Northeast, Incorporated (collectively referred to hereinafter as "Argus")[1] commenced this action for monetary and injunctive relief against Eastman Kodak Company ("Kodak"), GTE Sylvania Incorporated ("Sylvania"), General Electric Company ("G.E."), and several individual officers, directors and employees of Kodak, Sylvania and G.E.[2] Plaintiffs seek treble damages and injunctive relief under sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Sylvania has moved for summary judgment and Kodak and G.E. have moved for partial summary judgment (1) dismissing all claims based upon products which were introduced to the public prior to August 27, 1975 on the ground that such claims are barred by the applicable statute of limitations, and (2) dismissing the claim that Kodak conspired with G.E. and Sylvania in violation of section 1 of the Sherman Act in connection with the development and introduction of the "Sensalite" camera on the ground that the undisputed facts demonstrate the absence of any conspiracy. In addition, Kodak has moved for summary judgment dismissing all of plaintiffs' monopolization claims under section 2 of the Sherman Act on the ground that, as a matter of law, plaintiffs' relevant allegations do not constitute antitrust violations under the Second Circuit's decision in *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d

Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). Also before the court are motions by plaintiffs (1) for leave to file a supplemental complaint, and (2) for partial summary judgment precluding Kodak, under the doctrine of offensive collateral estoppel, from relitigating or denying certain facts allegedly determined in *Berkey.*

## Background

Argus and Kodak are competitors in several markets within the amateur photographic equipment business. Argus contends that Kodak has dominated the industry and, in violation of section 2 of the Sherman Act, has unlawfully wielded its monopoly power in the domestic markets for film in order to monopolize the markets for 8 millimeter cameras, conventional still cameras, slide projectors and other photographic equipment. Argus also contends that Kodak engaged in a prolonged joint development conspiracy with G.E. and Sylvania, which manufactured illumination devices compatible with Kodak equipment, to restrain trade in the markets for these products to the detriment of plaintiffs.[3] Many of the claims that are asserted by Argus are similar or identical to claims earlier asserted by Berkey Photo, Inc. ("Berkey") and GAF Corporation ("GAF") in prior antitrust actions filed in this district. *See Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203 (S.D.N.Y.1981).[4]

## Discussion

I. *Statute of Limitations*

Under 15 U.S.C. § 15b, private antitrust actions for damages pursuant to section 4 of

---

1. Interphoto Corporation is a subsidiary of Argus Incorporated, and Sugra Northeast, Incorporated is an affiliate of Argus that is wholly owned by Daniel Porco, the chief executive officer of both Argus and Interphoto.

2. The individual defendants are: Walter A. Fallon, Herman H. Waggershauser, Colby H. Chandler, Louis K. Eilers, Robert E. Anderson, Paul F. Cameron, William F. Rueger, Richard Hodges, Jay W. White, R. Stanley Dobler, Mal-

colm W. Smith, Arthur L. Chapman, Charles A. Burton, and Robert P. Burrows.

3. Argus also alleges related conspiracies involving the individual defendants.

4. Much of the relevant background concerning the industry and several of the products here at issue is set forth in detail in the *Berkey* and *GAF* opinions and will not be repeated here.

the Clayton Act are "forever barred unless commenced within four years after the cause of action accrued." Since the complaint in the instant case was filed on August 27, 1979, any cause of action asserted therein which accrued before August 27, 1975 is barred by the statute of limitations.[5] Defendants assert that the following claims are time barred: (1) section 1 claims premised upon an alleged "flashcube conspiracy" in which Kodak and Sylvania conspired secretly to develop a new battery-powered flash device (the "flashcube") which was compatible only with a modified Kodak 126 instamatic camera; (2) section 1 claims premised upon an alleged "magicube conspiracy" in which Kodak and Sylvania conspired secretly to develop a percussion fired flash device requiring no batteries (the "magicube") which was compatible only with a modified Kodak 126 instamatic camera; (3) section 1 claims premised upon an alleged "flipflash conspiracy" in which Kodak and G.E. conspired secretly to develop a new flash device capable of being flashed by a piezoelectric crystal (the "flipflash") which was compatible only with modified Kodak 110 and 126 pocket instamatic cameras; and (4) all section 2 monopolization claims premised upon products introduced prior to August 27, 1975, *i.e.,* claims regarding the 126 still photography system, the Super-8 movie system, the XL movie system, the 110 still photography system, and the Ektasound movie system. The decisive issue regarding defendants' motions for summary judgment on these claims is whether the record establishes, as a matter of law, that the causes of action underlying these claims accrued prior to August 27, 1975. Hence, the court first turns to the law governing the accrual of causes of action under the applicable statute of limitations and then applies the relevant principles to each of the above claims.

In *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), the Supreme Court set forth the law governing the time at which an antitrust cause of action accrues. The Court there stated that:

> Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.... In the context of a continuing conspiracy to violate the antitrust laws ... this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act.

401 U.S. at 338, 91 S.Ct. at 806. Therefore, the general rule precludes recovery for any injuries resulting from acts committed prior to the commencement of the limitations period. The Court further held, however, that the general rule does not apply where, as a result of acts committed prior to the limitations period, the plaintiff sustained damages within the limitations period that previously were unrecoverable because their accrual was speculative or their amount and nature unprovable. Under these circumstances, the cause of action accrues on the date the injuries are suffered. *Id.* at 339, 91 S.Ct. at 806; *see International Railway of Central America v. United Brands Co.,* 532 F.2d 231, 247 (2d Cir.), *cert. denied,* 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976).

Accordingly, plaintiffs' claims are time-barred unless the acts complained of (1) occurred within the limitations period, *i.e.,* after August 27, 1975, or (2) occurred outside the limitations period, but caused plaintiffs to suffer damages within the limitations period and such damages were too speculative to be recoverable prior thereto. Of course, in the context of these motions for summary judgment, defendants must demonstrate the absence of any genuine issues of material fact bearing upon the asserted statute of limitations defenses. Furthermore, the court must resolve all ambiguities and draw all reasonable inferences

---

5. The analysis here, and in the sections that follow, pertains only to plaintiffs' claims for damages. Whether plaintiffs' corresponding claims for equitable relief are time barred is considered *infra* at pp. 599–600.

in favor of the plaintiffs. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *American International Group, Inc. v. London American International Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir.1981). The court will first apply these principles to the relevant section 1 conspiracy claims and then turn to the section 2 monopolization claims.

### The Flashcube Conspiracy

The complaint alleges that Kodak conspired with Sylvania in order to prevent the development of the flashcube from being disclosed to other camera manufacturers until Kodak had developed a compatible camera. The essential complaint is that by virtue of this conspiracy, Kodak for a significant period of time was the only camera manufacturer able to sell cameras to consumers who desired to use the highly promoted flashcubes. It is undisputed that the flashcube and the compatible Kodak cameras were introduced in July 1965, more than ten years prior to the commencement of the limitations period.

Defendants Sylvania and Kodak argue that any wrongful acts in connection with the failure to predisclose the flashcube necessarily ended when the product was introduced to the public in 1965. They further argue that the record establishes that plaintiffs did not sustain any injury within the limitations period by virtue of the alleged flashcube conspiracy and that even if such injury were sustained, the damages were not incapable of being proven prior to August 27, 1975. Therefore, defendants argue, the flashcube conspiracy claim is time-barred under the principles set forth by the Supreme Court in *Zenith*. Plaintiffs counter that there are genuine issues of fact which preclude the entry of summary judgment regarding whether overt acts in furtherance of the conspiracy were committed after August 27, 1975, whether plaintiffs sustained injury during the limitations period, and whether the damages thus sustained were speculative as of August 27, 1975.

The court holds that the flashcube conspiracy claims are barred by the statute of limitations. Plaintiffs' claim that overt acts continued beyond August 27, 1975 is based upon their assertion that the flashcube conspiracy was actually one part of a larger "joint development" conspiracy among the defendants and that subsequent conspiratorial acts by the defendants save the flashcube claim from the bar of the statute. This argument ignores the basic teaching of *Zenith* that each unlawful act committed by defendants gives rise to a separate cause of action which will be barred by the statute unless it accrued within the limitations period. 401 U.S. at 338, 91 S.Ct. at 806. The conduct complained of in the section of the complaint detailing the "flashcube conspiracy" concerns the failure of Kodak and Sylvania to disclose the flashcube development until Kodak was ready to market a compatible camera. The court agrees with defendants that any conduct in furtherance of *this* unlawful enterprise could not possibly have continued beyond July 1965 when the product admittedly was disclosed to the public at large. Plaintiffs cannot avoid the bar of the statute of limitations merely by characterizing each claim as part of a broad ongoing conspiracy continuing into the limitations period. *See Zenith, supra,* 401 U.S. at 338, 91 S.Ct. at 806.

Since the acts complained of in the alleged flashcube conspiracy occurred more than ten years prior to the limitations period, plaintiffs cannot sustain their cause of action unless they can show both that they were injured within the limitations period and that the resulting damages were speculative prior thereto. In order to demonstrate the absence of any such injury in the limitations period, defendants point *inter alia* to the following evidence in the record: (1) plaintiffs' admission that Argus developed its own flashcube compatible camera approximately one year after the flashcube was introduced to the public; (2) Argus' statement in answers to interrogatories indicating that sufficient time had elapsed by the fiscal year ending March 31, 1969 to permit Argus' sales of flashcube compatible

cameras in that year to be used as an estimate of what sales would have been in prior years absent the flashcube conspiracy; (3) plaintiffs' assertion that the introduction of the magicube in 1970 obsoleted existing product inventories of 126 cameras; and (4) a letter from Argus' general manager indicating that the company's flashcube compatible cameras were discontinued in 1971.

■ In light of defendants' convincing presentation that no injury was suffered by Argus during the limitations period, plaintiffs are obligated to " 'set forth specific facts showing that there is a genuine issue for trial.' Such an issue is not created by a mere allegation in the pleadings . . . nor by surmise or conjecture on the part of the litigants. . . ." *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379 at 381 (2d Cir. 1982) (quoting Rule 56(e), Fed.R.Civ.P.). Since the voluminous affidavits submitted by plaintiffs are devoid of facts indicating that the damages to Argus from the flashcube conspiracy continued beyond August 27, 1975, defendants' motion for summary judgment as to the flashcube conspiracy claims must be granted.

### The Magicube Conspiracy

As with the flashcube, Argus alleges that Kodak and Sylvania conspired to prevent the magicube from being disclosed to other camera manufacturers until Kodak developed a compatible camera. Since the claims regarding the magicube are essentially the same as those regarding the flashcube, much of the analysis set forth above applies with equal force here. It is undisputed that the magicube and the compatible Kodak cameras were introduced in June 1970, more than five years prior to the commencement of the limitations period.

■ Since the relevant conduct pertaining to the magicube conspiracy occurred prior to the limitations period,[6] plaintiffs

once again must establish that they were injured during the limitations period and that the resulting damages were speculative prior thereto. Defendants have attempted to establish the absence of injury in the limitations period through the following: (1) plaintiffs' admission that Argus developed its own magicube compatible camera approximately one year after the magicube was introduced to the public; and (2) statements by plaintiffs indicating that the anticompetitive effects of the *flashcube* conspiracy terminated within three years after Argus introduced a flashcube compatible camera. Defendants argue that plaintiffs' admissions regarding the flashcube are applicable by analogy to the anticompetitive effect of the magicube conspiracy.[7]

The court finds defendants' presentation, which requires the court to infer that the duration of the injury from the flashcube conspiracy was the same as that from the magicube, is insufficient to defeat plaintiffs well-pleaded allegation that they suffered injury in the limitations period from the magicube conspiracy. Defendants are still entitled to summary judgment, however, if they can establish that the damages were not too speculative to be recoverable prior to the commencement of the limitations period.

Defendants argue that prior to August 27, 1975, Argus had accumulated more than four years of sales data regarding its own magicube compatible cameras, and that this sales history was clearly an adequate basis for a reasonable projection of future sales and damages resulting from the magicube conspiracy. Argus argues that any projections made prior to August 27, 1975 were completely speculative due to various uncertainties in the relevant market and in the economy.

---

6. As with the flashcube conspiracy, the magicube conspiracy as alleged in the complaint necessarily terminated when the product was disclosed to the public at large.

7. Defendants also rely on various factual assertions set forth in the *Berkey* opinion. Of

course, the factual findings in *Berkey* cannot be binding on plaintiffs who were neither parties nor in privity with the parties in the *Berkey* action. *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

The court finds that the facts regarding the industry, the relevant markets and the available historical data as set forth in plaintiffs' own affidavits establish beyond any doubt that plaintiffs' damages were sufficiently capable of proof to be recoverable prior to the commencement of the limitation period. These affidavits indicate that it generally takes one year for a competing manufacturer such as Argus to introduce a competitive product after Kodak has introduced a new product. Following the introduction of the competing product, consumer reactions can be evaluated after the Christmas selling and return seasons are completed. Hence, there is by plaintiffs' own admission at least a preliminary factual basis for evaluating consumer reactions to the competing products after January of the calendar year two years after the calendar year in which the new product is first introduced by Kodak. *See* Porco Rebuttal Aff. ¶ 13.

■ The availability of such factual data is sufficient as a matter of law to render the magicube future damages sufficiently ascertainable prior to August 27, 1975. All that is required is sufficient evidence to have permitted the damage issue to go to a jury prior to the commencement of the limitations period. *Monona Shores, Inc. v. United States Steel Corp.*, 374 F.Supp. 930, 936 (D.Minn.1973). So long as the fact of injury is established, juries are permitted great leeway in determining the actual extent of the damages. It is clearly sufficient if there is a relevant factual basis for a reasonable estimate of the damages. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–66, 51 S.Ct. 248, 250–251, 75 L.Ed. 544 (1931); *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 73–74 (9th Cir.), *cert. denied sub nom. AMF Inc. v. General Motors Corp.*, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); *Charlotte Telecasters, Inc. v. Jeffer-*

*son-Pilot Corp.*, 546 F.2d 570, 573 (4th Cir. 1976).

After even one year of comparison data regarding the Kodak and Argus products, the fact of injury to Argus from the alleged conspiracy was unequivocally established by the sales of competing Argus products. Moreover, after both Argus and Kodak sold competing products through a Christmas selling and return season, an evaluation of consumer reactions, feasible by plaintiffs' own admission, would have provided a reasonable basis for a jury award of future damages under the above-cited cases. Surely four years of such comparison data is clearly sufficient to permit reasonable estimates. Accordingly, the record establishes that plaintiffs' damages were not too speculative to be recoverable prior to August 27, 1975 and therefore summary judgment dismissing the magicube conspiracy claims must be granted.

### The Flipflash Conspiracy

■ Plaintiffs allege that Kodak conspired with G.E. to prevent the flipflash from being disclosed to other camera manufacturers until Kodak had developed a compatible camera. The flipflash and a compatible Kodak 110 instamatic camera were introduced to the public in April 1975, just four months prior to the commencement of the limitations period.[8]

Defendants' motions for summary judgment with respect to the flipflash conspiracy are premised upon their contention that Argus reasonably could have predicted future damages resulting from the flipflash conspiracy prior to August 27, 1975 by using sales data available after the flashcube and magicube introductions and by analyzing Argus camera sales in June, July and August of 1975. Argus has submitted affidavits, however, indicating principally that due to the nature of the industry and uncertainties regarding the flipflash product, any such estimate only four months after the

---

**8.** Plaintiffs once again argue that numerous conspiratorial overt acts subsequent to the public introduction of the product save the claim from the statute of limitations. As with

the flashcube and magicube claims, the court holds that the flipflash conspiracy as alleged in the complaint necessarily terminated when the product was disclosed to the public at large.

flipflash was introduced, and before Argus could market a competing product, were completely conjectural and without any reasonable factual basis. These affidavits give rise to an issue of fact which precludes the entry of summary judgment as to the flipflash claims. *See Continental-Wirt Electronics Corp. v. Lancaster Glass Corp.*, 459 F.2d 768 (3rd Cir.1972).

### Section 2 Claims Regarding Products Introduced Prior to August 27, 1975

■ The complaint alleges that Kodak violated section 2 of the Sherman Act by unlawfully using its monopoly power in the film market to monopolize and dominate the markets for cameras, slide projectors, movie projectors and related equipment. Plaintiffs allege that Kodak secretly developed "integrated photographic combinations" consisting of new film types and formats along with compatible cameras, slide projectors and other equipment without prior disclosure to competitors. Kodak was then able to exploit its film monopoly by introducing highly promoted film products compatible only with the new Kodak equipment which was simultaneously introduced. Plaintiffs assert that they were damaged by Kodak's failure either to produce the new film products in formats compatible with pre-existing Argus equipment, or to give notice of the new products to Argus so that competing Argus equipment could be manufactured before the film was marketed to the public.

Kodak contends that the statute of limitations bars all section 2 claims arising out of the introduction of new products prior to the limitations period.[9] Under the principles set forth above, since these claims are premised upon conduct occurring prior to August 27, 1975, they are time-barred un-

less plaintiffs suffered injury from the violations during the limitations period and the resulting damages were too speculative to be recovered prior thereto.

Although Kodak claims that Argus did not suffer any injury during the limitations period, Kodak has failed to submit any affidavits or other documents in compliance with Rule 56(e) sufficient to defeat plaintiffs' well pleaded allegations that they suffered such injury. Therefore, the court turns to the evidence in the record bearing upon whether the damages allegedly suffered by Argus were speculative prior to August 27, 1975.

The court holds that the record establishes, as a matter of law, that plaintiffs' damages from the relevant Kodak products were sufficiently capable of being proven to be recoverable prior to the commencement of the limitations period. The conclusion is compelled by the same evidence in the record and the same legal principles set forth above with regard to the purportedly speculative nature of the damages flowing from the magicube conspiracy. As stated above, plaintiffs' own submissions demonstrate that a preliminary factual basis for evaluating consumer reactions to a new product introduced by Kodak and to competing products produced by Argus is available after January of the calendar year two years after the calendar year in which the new product was first introduced by Kodak. Since the most recently introduced product involved in this aspect of Kodak's motion was introduced in August of 1973, Argus could have had sufficient evidence to have permitted the damage issue to go to a jury with respect to each of the relevant products prior to the commencement of the limitations period in August of 1975.[10] There-

---

9. The products and the corresponding dates of introduction to the public are as follows: (1) 126 still photography system introduced in March 1963; (2) Super-8 movie system introduced in May 1965; (3) XL movie system introduced in August 1971; (4) 110 still photography system introduced in March 1972; and (5) Ektasound movie system introduced in August 1973.

10. The record does not establish whether Argus in fact had marketed competing products with respect to some of the equipment here at issue prior to the commencement of the limitations period. Nevertheless, the court has no doubt that the industry data available by the commencement of the limitations period would have been sufficient for plaintiffs to present a jury issue as to future damages with respect to each of the relevant products.

fore, the record establishes that plaintiffs' damages were not too speculative to be recoverable prior to August 27, 1975 and summary judgment dismissing the relevant section 2 claims must be granted.

### Equitable Relief

Having concluded that several of plaintiffs' claims for damages are barred by the statute of limitations, the court must next determine whether plaintiffs' corresponding claims for equitable relief are barred as well.[11] Defendants assert that if a claim seeking a legal remedy is barred, equitable relief is also barred by the four year limitations period. Defendants further argue that in any event, equitable relief is barred under the doctrine of laches.

The relevant statute of limitations set forth at section 4B of the Clayton Act does not by its terms apply to claims for equitable relief pursuant to section 16 of the Clayton Act. Several courts have assumed, however, that when the statute of limitations bars a claim for damages pursuant to section 4 of the Clayton Act, it bars any corresponding claims for equitable relief as well. See Weinberger v. Retail Credit Co., 498 F.2d 552, 556 (4th Cir.1974); Dayco Corp. v. Firestone Tire & Rubber Co., 386 F.Supp. 546, 549 (N.D.Ohio 1974), aff'd on other grounds sub nom. Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 395 (6th Cir.1975); Farbenfabriken Bayer, A.G. v. Sterling Drug, Inc., 197 F.Supp. 627, 629 (D.N.J.1961), aff'd on other grounds, 307 F.2d 210 (3d Cir.1962), cert. denied, 372 U.S. 929, 83 S.Ct. 872, 9 L.Ed.2d 733 (1963). These decisions are premised upon the well-established rule that where a single cause of action[12] entitles a plaintiff to seek concurrently both legal and equitable relief, "equity will withhold its remedy if the legal right is barred by the local statute of limi-

tations." Russell v. Todd, 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940); see Williams v. Walsh, 558 F.2d 667, 671 (2d Cir.1977).

On the other hand, the Ninth Circuit has held that the statute of limitations governing actions for damages under section 4 of the Clayton Act does not apply to equitable claims under section 16. International Telephone and Telegraph Co. v. General Telephone & Electronics Corp., 518 F.2d 913, 927–29 (9th Cir.1975). The Ninth Circuit's decision is based upon the fact that relief may be available under section 16 of the Clayton Act even though damages are not recoverable under section 4 since only a threatened violation of substantive antitrust law is necessary to establish a basis for equitable relief. 518 F.2d at 927; see Zenith Corp. v. Hazeltine, 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969). Since a given set of facts may give rise to a claim only under section 16, section 4 and section 16 give rise to distinct causes of action, see note 12, supra, and therefore the above-stated rule governing cases in which legal and equitable relief are concurrently available is not applicable.

The Ninth Circuit further held that the doctrine of laches is applicable to section 16 claims, and that the appropriate laches time period should be determined by adopting the analogous four-year limitations period applicable to section 4 claims for damages. Id. at 928. Finally, the court concluded, in accordance with well-established equitable doctrine, that even if the four-year laches period has run, equitable relief will not be barred by laches if the trial court, in the exercise of its discretion, determines (1) that sufficient reasons cognizable in equity excuse the delay or (2) that the delay caused defendants no prejudice. Id. at 929.

---

11. The equitable relief sought by plaintiffs includes an order of divestiture against Kodak and injunctions restraining Kodak, G.E. and Sylvania from engaging in further anticompetitive acts.

12. A cause of action is " 'a situation or state of facts which entitles a party to sustain an action

and gives him the right to seek judicial interference in his behalf.' " Williams v. Walsh, 558 F.2d 667, 670 (2d Cir.1977) (quoting Rhodes v. Jones, 351 F.2d 884, 886 (8th Cir.1965), cert. denied, 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673 (1966)).

■ The Court agrees with the analysis set forth by the Ninth Circuit in *International Telephone & Telegraph Co.* The cases reaching a contrary result incorrectly presumed that a given violation of substantive antitrust law gives rise to only a single cause of action for both legal and equitable relief. Accordingly, the court holds that the equitable claims pursuant to section 16 of the Clayton Act are not time-barred unless plaintiffs are guilty of laches under the standard set forth above.

■ The laches period has expired with respect to each of plaintiffs' equitable claims for which the corresponding legal claims are time-barred, and plaintiffs have proffered no cognizable excuses for the undue delay. Defendants, however, have failed to establish the absence of genuine issues of fact with respect to whether defendants were prejudiced in their defense of this action by the delay.[13] Accordingly, summary judgment cannot be granted with respect to plaintiffs' claims for equitable relief.

## II. *Sensalite Conspiracy Claim*

In 1980, Kodak introduced a modified 110 camera which incorporates an electronic sensing device that automatically activates a built in strobe flash unit when flash illumination is required. The complaint alleges that this flash unit, marketed under the name "Sensalite",[14] was developed by G.E. and Sylvania, and that Kodak conspired with G.E. and Sylvania to prevent the new flash device from being disclosed to the public until Kodak developed a camera equipped to use the device. Kodak, Sylvania, and G.E. have moved for summary judgment with respect to this claim on the ground that the uncontroverted evidence in the record demonstrates that the Sensalite product was developed solely by Kodak and not from any joint development scheme.

■ Since these motions were filed, plaintiffs have consented to the dismissal of the Sensalite claim as against Sylvania. With respect to the motions by G.E. and Kodak, it is true that uncontroverted affidavits in the record establish that the Sensalite device was developed by Kodak alone. Plaintiffs, however, assert by affidavit that they are presently unable to present facts to support their opposition to the motions since no discovery has yet been had regarding the Sensalite claim.[15] The court concludes that plaintiffs have set forth by affidavit adequate reasons why they are presently unable to submit appropriate evidence in opposition and therefore the motions for summary judgment by Kodak and G.E. with regard to the Sensalite conspiracy claim are denied. *See* Rule 56(f), Fed.R. Civ.P.; 6 *Moore's Federal Practice* ¶ 56.24. The court's ruling, however, is without prejudice to Kodak and G.E. to renew their motions after discovery has been conducted.

## III. *Section 2 Claims Against Kodak*

As mentioned above, plaintiffs allege that Kodak violated section 2 of the Sherman Act by unlawfully using its monopoly power in the film market to dominate and monopolize the markets for cameras, slide projectors, movie projectors and related equipment. Kodak asserts that plaintiffs' section 2 claims are insufficient as a matter of law under the Second Circuit's decision in *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), and therefore summary judgment should be entered dismissing these claims even though no discovery on the merits has yet been conducted.

Plaintiffs' section 2 claims attack as anticompetitive Kodak's repeated practice of simultaneously introducing new highly pro-

---

**13.** Kodak and Sylvania made no attempt to demonstrate prejudice. Although G.E. submitted an affidavit indicating that they suffered prejudice from the delay, plaintiffs have submitted an affidavit contradicting most of G.E.'s assertions therein.

**14.** The complaint refers to the product as a "Wink" camera, and refers to the alleged violation as the "Wink Conspiracy".

**15.** The court has limited discovery thus far solely to the statute of limitations issues.

moted film products and new compatible Kodak equipment. The complaint alleges that Kodak unlawfully wielded its monopoly power in the film market by failing to give Argus and other equipment manufacturers adequate notice of the new film products, and by producing the new film products in formats compatible only with the newly introduced Kodak equipment.

Section 2 of the Sherman Act condemns monopoly power when it is accompanied by anticompetitive conduct amounting to "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–1704, 16 L.Ed.2d 778 (1966); *Berkey, supra,* 603 F.2d at 274. In *Berkey,* the Second Circuit carefully delineated the requirement of anticompetitive conduct in the context of an action against Kodak raising many claims identical to those asserted by plaintiffs in the instant case. The court held that although the use of monopoly power in one market to gain a competitive advantage in another market violates section 2, a firm possessing monopoly power does not violate the Sherman Act merely by exploiting business opportunities which flow from the competitive advantages of integration. In other words, section 2 does not prohibit a firm possessing market power from reaping rewards that could accrue to any large or integrated firm irrespective of its market share. 603 F.2d at 276. However, if a firm gains a competitive advantage in one market by leveraging its monopoly power in another market, or even if the firm's monopoly power is only a "partial root" of the effectiveness of the firm's conduct, then such conduct is condemned by section 2. *Id.* at 292; *see GAF, supra,* 519 F.Supp. at 1225–27.

In applying the above principles to precisely the same type of practices as those alleged in the instant case, the Second Circuit held that the simultaneous introduction of a new film product and compatible equipment in a new format without predisclosure, without more, is solely a benefit of integration and not an unlawful use of monopoly power in the film market. 603 F.2d at 283.[16] The court further concluded, however, that Kodak's failure to produce the new film product in pre-existing formats might supply an element of consumer coercion flowing from Kodak's monopoly power that could give rise to a violation of section 2. 603 F.2d at 288.

■ Applying these principles to the case at bar, the court concludes that although *Berkey* explicitly rejected much of the rationale urged upon the court by plaintiffs, summary judgment should not be granted on the merits of plaintiff's section 2 claims. If Argus can establish that Kodak's failure to produce the relevant film products in formats compatible with pre-existing Argus equipment resulted in a competitive advantage for Kodak that was not solely a benefit of integration, but was rather a coercive use of Kodak's monopoly power in the film market, then Argus can establish a cause of action under section 2 under the principles set forth in *Berkey.* Absent such a showing, Kodak's admitted practice of developing and simultaneously marketing new integrated products without notice to competitors will not give rise to an antitrust violation.[17]

IV. *Plaintiffs' Motion to Supplement the Pleadings*

Plaintiffs have moved for leave to file a supplemental complaint pursuant to Rule 15(d), Fed.R.Civ.P., in order to allege additional facts that occurred subsequent to the

---

**16.** The *Berkey* court was there analyzing Kodak's simultaneous introduction of Kodacolor II film and compatible 110 instamatic cameras.

**17.** The court notes that plaintiffs assert in their opposition affidavits that Kodak engaged in additional conduct, not alleged in the com-

plaint, that could give rise to a section 2 violation. Since these claims are not properly pleaded, and since the court is denying the motion for summary judgment on the merits in any event, the court has no occasion to consider these allegations here.

filing of the current pleadings.[18] In particular, plaintiffs seek to add a section 2 claim premised upon Kodak's introduction in 1982 of new HR Kodacolor disc film and a new compatible camera which was simultaneously introduced. This new claim challenges precisely the same type of conduct attacked in the current section 2 claims which were analyzed above. Hence plaintiffs allege in essence that Kodak violated section 2 by failing to give prior notice of the new film to Argus and other camera manufacturers and by restricting the new HR Kodacolor film to the new disc format.

Rule 15(d) permits a plaintiff to supplement the complaint in order to present subsequent material that is related to the claims presented in the original complaint. *See* 3 *Moore's Federal Practice* ¶ 15.16[1]. Absent prejudice to the defendants, leave to supplement the complaint should be liberally granted. *See Rowe v. United States Fidelity and Guaranty Co.,* 421 F.2d 937, 942–44 (4th Cir.1970). Kodak contends that such leave should be denied in the instant case since the newly 'asserted claim is insufficient as a matter of law.

Kodak's argument must be rejected. Under the principles set forth above, it is possible that plaintiffs could establish that Kodak's failure to produce the new HR Kodacolor film in formats compatible with pre-existing Argus equipment violated the antitrust laws.

Accordingly, plaintiffs' motion for leave to supplement the complaint is granted.

## V. *Collateral Estoppel Effect of Berkey*

Plaintiffs have cross-moved for partial summary judgment to preclude Kodak from denying certain facts that were allegedly determined against Kodak in *Berkey.* Plaintiffs' motion is premised upon the doctrine of offensive collateral estoppel which may preclude a defendant from relitigating an issue decided adversely to the defendant in a prior action against him by a different plaintiff. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *GAF, supra,* 519 F.Supp. at 1210 & n. 2.

A prior action cannot have a collateral estoppel effect as to any given issue unless that issue was raised and actually determined in the prior suit. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); 1B *Moore's Federal Practice* ¶ 0.443[1]. In addition, "application of the doctrine . . . is carefully circumscribed by two key requirements: (1) the issue in the subsequent suit must be identical to the issue actually decided in the prior suit and (2) the determination of the issue in the prior suit must have been necessary and essential to the judgment in that action." *RX Data Corp. v. Dept. of Social Services,* 684 F.2d 192, 197 (2d Cir.1982). Furthermore, the offensive use of collateral estoppel must not be permitted where the application of the doctrine would be unfair to a defendant under the circumstances of the case. *Parklane Hosiery, supra,* 439 U.S. at 331, 99 S.Ct. at 651.

A threshold question is whether, as Kodak contends, plaintiffs may not use collateral estoppel offensively since Argus could easily have joined in the *Berkey* case. It is true that where a plaintiff could easily have joined in the prior action, the court should not permit the use of offensive collateral estoppel. *Parklane Hosiery, supra,* 439 U.S. at 331, 99 S.Ct. at 651. However, it is clear that Argus could not have easily joined in the *Berkey* action. As Judge Pierce noted in rejecting a similar claim by Kodak with respect to GAF, the complexity of the two cases and the fact that counterclaims were being asserted by Kodak in the *Berkey* case, combined with the fact that both cases are jury trials, indicates that it would have been extremely difficult for Argus to have joined in the *Berkey* action. *GAF, supra,* 519 F.Supp. at 1215. Accordingly, the court turns *seriatim* to each of the eight facts as to which Argus seeks

---

**18.** The original complaint was filed on August 27, 1979. Plaintiffs filed an "amended and supplemental complaint" on August 4, 1981.

issue preclusion in order to determine whether the remaining requirements for the application of collateral estoppel have been satisfied.

First, plaintiffs seek to preclude Kodak from relitigating that from 1954 to 1976 there was a relevant nationwide market for amateur conventional still cameras in which Kodak possessed monopoly power. The jury in *Berkey* found that Kodak monopolized the camera market and awarded treble damages to Berkey for violations of section 2 of the Sherman Act. On appeal, the Second Circuit explicitly stated that the evidence in the record supported the jury's finding regarding Kodak's monopoly power in the market for cameras. 603 F.2d at 279. However, the court further held that Berkey did not establish the remaining elements of a section 2 violation. Accordingly, the Second Circuit reversed the damages award and judgment was entered in favor of Kodak on the section 2 camera claims. 603 F.2d at 290. Kodak argues that since the judgment on the camera claims was in Kodak's favor, the Second Circuit's findings regarding market definition and market power were not necessary to the judgment, and therefore do not have a collateral estoppel effect.

The same issue now facing this court, *i.e.,* whether the above disposition in *Berkey* should estop Kodak from denying market power in the amateur camera market, was decided by Judge Pierce in *GAF, supra.* Judge Pierce reasoned that in order to prevail on a monopolization claim, a plaintiff must sequentially prove (1) the relevant market, (2) market power, and (3) the remaining elements necessary to establish a section 2 violation. 519 F.Supp. at 1213. Therefore, the court held that even though the Second Circuit reversed the damages award due to a failure of proof on the remaining elements, its decision on the market definition and market power issues were necessarily decided first and could have a collateral estoppel effect. *Id.*

■ This court respectfully disagrees with the above analysis. As mentioned above, the collateral estoppel doctrine cannot be applied unless "the determination of the issue in the prior suit [was] necessary and essential *to the judgment* in that action." *RX Data Corp., supra,* 684 F.2d at 197 (emphasis added). Accordingly, with few exceptions not applicable here, "determinations adverse to the winning party do not have preclusive effect." *United States v. Cheung Kin Ping,* 555 F.2d 1069, 1076 (2d Cir.1977), citing with approval 1B *Moore's Federal Practice* ¶ 0.443[5] at 3922 ("The generally accepted, and in our view correct, rule . . . is that the judgment is conclusive only of those issues whose determination supports the judgment"). As Professor Moore has observed, where "the adjudication of the issue does not dictate the judgment, [it] is thereby deprived, to some degree, of the assurances of integrity and correctness that the judicial process affords to genuinely dispositive adjudications." 1B *Moore's Federal Practice* ¶ 0.443[5].

■ Since the Second Circuit's judgment as to the camera claims in *Berkey* was in favor of Kodak, the findings as to market definition and Kodak's market power in the amateur camera market were clearly not necessary and essential to that judgment. Therefore, Kodak is not collaterally estopped from denying these facts in the instant case.

■ Second, plaintiffs seek to estop Kodak from denying that from 1952 to 1976 there was a relevant nationwide market for conventional photographic film in which Kodak possessed monopoly power. GAF made this same application to Judge Pierce who held that offensive collateral estoppel could appropriately be applied against Kodak as to these issues. The court fully agrees with the relevant portions of Judge Pierce's analysis and his conclusion that Kodak should be collaterally estopped from relitigating market definition and market power issues with respect to the film market. *See GAF, supra,* 519 F.Supp. at 1212–16.

■ Third, plaintiffs seek to estop Kodak from denying that from 1930 to 1972 Kodak refused to make film available in

formats requested by competing camera manufacturers. Since Kodak prevailed on Berkey's camera claims, this purported finding was not necessary or essential to the Second Circuit's judgment and therefore the collateral estoppel doctrine may not be applied.

■ Fourth, plaintiffs seek to estop Kodak from denying that Kodak's decision to market Kodacolor II exclusively in the 110 format was taken for anticompetitive purposes. The Second Circuit merely assumed this fact *arguendo* in the course of its analysis in *Berkey*. 603 F.2d at 288. Since this fact was not determined in the prior action Kodak is not collaterally estopped from denying it.

■ Fifth, plaintiffs seek to estop Kodak from denying that anticompetitive conduct by Kodak enabled it to charge excessive prices for film from 1969 to 1976. The Second Circuit never decided this issue, but rather remanded the matter for a new trial due to the inadequacy of the proof below. 603 F.2d at 298. Therefore, the collateral estoppel doctrine is not applicable.

■ Sixth, plaintiffs seek to estop Kodak from denying that Kodak and G.E. entered into a joint development program whereby they kept a "desirable innovation" (presumably the flipflash) off the market to benefit Kodak. Although the Second Circuit observed in *Berkey* that the jury could have made such a finding, 603 F.2d at 302, there is no indication in the opinion or elsewhere that such a finding actually was made. Therefore, the collateral estoppel doctrine is not applicable.

■ Seventh, plaintiffs seek to estop Kodak from denying that the Kodak-Sylvania magicube agreement and the Kodak-G.E. flipflash agreement violated section 1 of the Sherman Act. This same issue was before the court in *GAF,* and the court agrees with Judge Pierce that the preconditions for the application of collateral estoppel are satisfied with regard to the magicube and flipflash conspiracies. *See* 519 F.Supp. at 1216–17.

Kodak, however, advances an argument against the offensive use of collateral estoppel that was not before the court in GAF. Kodak asserts that in the instant case, plaintiffs have named as defendants G.E., Sylvania, and the individual defendants, none of which were parties in *Berkey.* Since these defendants cannot be collaterally estopped by any of the *Berkey* determinations, Kodak argues that no judicial economy will be saved by applying collateral estoppel to Kodak alone. Furthermore, Kodak contends that the possibility of inconsistent judgments requires the court to refrain from applying collateral estoppel in the instant case.

■ Kodak's arguments are without merit. The court anticipates that substantial judicial economy may flow from the application of collateral estoppel even if the other defendants are free to litigate the same issues. Furthermore, it would be anomalous for plaintiffs to be forced to litigate issues against Kodak that would have been foreclosed by *Berkey* absent the presence of additional defendants in this action. Since it would not be unfair to defendants to permit plaintiffs to use offensive collateral estoppel and since the necessary preconditions for the application of the doctrine are satisfied, the court holds that Kodak is estopped from denying that the magicube and flipflash conspiracies violated section 1 of the Sherman Act.

■ Finally, plaintiffs seek to estop Kodak from denying that Sylvania's ownership interest in Argus until 1969 ᵂas sufficient to "raise the possibility" that absent the agreement with Kodak, Sylvania might have produced magicube cameras with Argus. Although the Second Circuit noted in *Berkey* that there was sufficient evidence in the record to raise such a possibility for the jury, 603 F.2d at 303, this "possibility" obviously was not a factual finding in *Berkey* that was actually and necessarily determined. Accordingly, the collateral estoppel doctrine is not applicable.

### Conclusion

1. Partial summary judgment is granted for defendants dismissing the following claims on the ground that they are barred by the statute of limitations: claims for

damages premised upon the alleged flash-cube and magicube conspiracies, and claims for damages premised upon violations by Kodak of section 2 of the Sherman Act involving the introduction of the 126 still photography system, the Super-8 movie system, the XL movie system, the 110 still photography system and the Ekta-sound movie system. In all other respects defendants' motions for summary judgment are denied.

2. The claims against Sylvania premised upon the alleged Sensalite conspiracy are dismissed on consent.

3. Plaintiffs' motion for leave to file a supplemental complaint is granted.

4. Partial summary judgment is granted for plaintiffs precluding Kodak from relitigating or denying the following: that from 1952 to 1976 there was a relevant nationwide market for conventional photographic film in which Kodak possessed monopoly power, and that the Kodak-Sylvania magicube agreement and the Kodak-G.E. flipflash agreement violated section 1 of the Sherman Act. In all other respects plaintiffs' cross-motion for partial summary judgment is denied.

So Ordered.