**ERIE CONDUIT CORPORATION,**
**Plaintiff,**

v.

**MAPA, et al., Defendants.**

**Civ. A. No. CV 77–521.**

United States District Court,
E.D. New York.

Aug. 15, 1984.

---

See also, 560 F.Supp. 305.

*Memorandum and Order*

MALETZ, Senior Judge.*

Under rule 41(b) of the Federal Rules of Civil Procedure, after the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as the trier of the facts may determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Thus in a non-jury case, the court, as the trier of the facts, is empowered on a rule 41(b) motion for dismissal to determine the facts on the basis of evaluating and weighing plaintiff's evidence in light of its credibility and other factors. If upon such determination the court concludes that plaintiff has shown no right to relief it may dismiss the action.

It is true that under rule 41(b) involuntary dismissals are generally not granted before the conclusion of plaintiff's case. However, where it is manifestly clear that a plaintiff will not prove his case, a court may dismiss an action under rule 41(b) at an earlier time on the basis of its inherent power to manage its own affairs so as to

* Of the United States Court of International Trade, sitting by designation.

achieve the orderly and expeditious disposition of cases. As the First Circuit said in its very recent decision in *D.P. Apparel Corp. v. Roadway Express, Inc.,* 736 F.2d 1, 3–4, decided May 31, 1984:

> As the rule [41(b)] itself announces motions for involuntary dismissal are normally not granted before the conclusion of plaintiff's case in chief. However, when it is manifestly clear that plaintiff will not prove his case, granting a Rule 41(b) motion at an earlier time may be permissible. *See Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 482 n. 15 (3rd Cir.1979). A district court has the inherent power to dismiss cases for failure to prove a claim irrespective of the time it is requested because in so doing the court is effectively controlling and managing its own affairs to achieve the expeditious disposition of cases. *See Link v. Wabash Railroad Co.,* 370 U.S. 626 [82 S.Ct. 1386, 8 L.Ed.2d 734] (1962).

As in *D.P. Apparel,* "[t]he facts herein reveal that this is one of the rare and exceptional cases in which a court is justified in dismissing the action before the completion of plaintiff's case." *Id.* at 4.

■ In view of the offer of proof by counsel for plaintiff at the close of Mr. James A. Comyns's testimony on redirect, it is apparent that plaintiff relies upon this testimony as a necessary component of its causes of action. Absent Mr. Comyns's testimony, plaintiff, of necessity, will be unable to prove certain vital elements of its case. Given Mr. Comyns's lack of credibility, and the court's determination that his testimony is unworthy of belief, it is manifestly clear to the court that plaintiff cannot prove its case, regardless of the possibility that it will prove all those facts referred to in the offer of proof.

■ For example, plaintiff depends upon the testimony of Mr. Comyns to prove a causal connection between defendants' allegedly illegal antitrust activities and some injury to Erie. This fact of injury must be demonstrated with reasonable certainty and may not be speculative. *Billy Baxter, Inc. v. Coca-Cola Co.,* 431 F.2d 183, 187 (2d Cir.1970), *cert. denied,* 401 U.S. 923, 91

S.Ct. 877, 27 L.Ed.2d 826, *reh'g denied* 401 U.S. 1014, 91 S.Ct. 1250, 28 L.Ed.2d 553 (1971). Indeed, failure to satisfactorily prove that a plaintiff is injured by reason of the defendant's alleged antitrust violations is sufficient to defeat the antitrust claims. *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.,* 510 F.2d 1140, 1142 (2d Cir.1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975).

Against this background, the record demonstrates that Erie Conduit was never a fiscally sound contractor. When Erie submitted its first bid on a street paving job, on October 4, 1971, it was a company in serious trouble, as evinced by the following:

(1) It had been stricken from the bidding list of the Empire City Subway Company, the only entity for which it had previously performed any work of consequence;

(2) On or about August 9, 1971, it had certified falsely to the Empire City Subway Company that Erie had paid all providers of labor, material, and equipment on Empire City jobs;

(3) It had never kept adequate books and records;

(4) It had never filed federal or state tax returns or paid such taxes;

(5) It had never emerged from its grossly under-capitalized condition at formation;

(6) It had operated at a loss throughout its existence; and

(7) It had misrepresented its financial condition in order to obtain a surety bond.

Shortly thereafter, on October 25, 1971, Erie sent a grossly fraudulent financial statement to the Department of Highways of the City of New York. Among other things, the statement claimed a net worth of $104,477.43 when Erie's net worth was actually a $12,219.75 deficit. The statement also claimed receivables of $75,690 when the actual figure was zero. There is little doubt that the City of New York would not have awarded street paving jobs to Erie, had it but known the truth, and

there is virtually no doubt that Erie would have been unable to obtain surety bonds necessary to the bidding process, had the truth been revealed.

Following Erie's successful bid on the first street paving contract, the Avenue U job, its financial condition deteriorated even further. While Erie was borrowing sums of money reaching $80,000 from loansharks who charged 150% in interest annually, Mr. Comyns was withdrawing significant sums from the corporate till for personal expenses. Erie's continuing failure to keep records or pay taxes was now accompanied by: (1) labor difficulties, resulting in sporadic work stoppages; (2) failure to pay union pension and welfare benefits; and (3) increasingly frequent fraudulent activities. By December 15, 1973, Erie was dissolved by proclamation of the New York Secretary of State, for failure to pay taxes. By the close of 1974, Erie had ceased to operate.

Withal, Erie argues that it was damaged by defendants' concerted refusal to sell it asphalt and pre-cast material. But even assuming that defendants thus concertedly refused to sell to Erie, the record demonstrates that Erie was able to obtain the asphalt, pre-cast materials, and equipment it sought, at or close to going rates.

■ Erie further contends that it would have earned a profit and recovered from its parlous financial state, but for a conspiracy by the defendants to delay the award of the Avenue U contract and the subsequent order to start work on that job. In the context of Erie's financial situation on October 4, 1971, before any of the allegedly unlawful acts of defendants took place, this contention is speculation piled on speculation. Damages must be proven with certainty, not speculation. *See Billy Baxter, supra. Cf. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256, 1263 (9th Cir.1981), *cert. denied sub nom. Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982) (plaintiff who is unable to show past profits cannot prove lost future profits, since there is no basis to believe plaintiff would have remained in business).

■ What is more, proof of damages must rest on some foundation of actual financial data before expert testimony may be credited. *See, e.g., United States v. R.J. Reynolds Tobacco Co.*, 416 F.Supp. 316 (D.N.J.1976). Such a foundation is eviscerated by Erie's failure to keep books and records. *See R.S.E., Inc. v. Pennsy Supply, Inc.*, 523 F.Supp. 954, 970 (M.D.Pa. 1981). In the absence of records, only one person could possibly know enough about Erie to testify to its underlying financial data. This person, Mr. Comyns, who ran Erie as his alter ego, is so unworthy of belief as to remove this possibility.

■ Given these circumstances—and accepting plaintiff's counsel's offer of proof—it is manifestly clear to the court that plaintiff will be unable to prove that it had been damaged by reason of defendants' allegedly unlawful activities, let alone the amount of such damages.

For the foregoing reasons, the court hereby dismisses plaintiff's action with prejudice. Judgment will be entered accordingly.