ERIE CONDUIT
CORPORATION, Plaintiff,

v.

METROPOLITAN ASPHALT PAVING ASSOCIATION; Durante Brothers & Sons, Incorporated; Anthony Grace & Sons, Incorporated; Edenwald Contracting Corporation; Frank Mascali & Sons, Incorporated; Tully & Di Napoli, Incorporated; Jet Asphalt Corporation; Metropolitan Asphalt Corporation; Columbia Asphalt Corporation; Precast Incorporated; Metropolitan Precast Products, Incorporated; Frank Castiglione; Estate of Louis Durante, Deceased; Anthony Grace; Richard Grace; Charles Follini; Robert Follini; Frank Locurto; Frank Mascali, Jr.; Gerald Tully; and Daniel S. Garvey, Defendants.

No. CV–77–521.

United States District Court, E.D. New York.

June 18, 1985.

---

Patrick M. Wall, New York City, for plaintiff.

Greene & Zinner, White Plains, N.Y. (Stanley S. Zinner, White Plains, N.Y., of counsel), for defendants Charles Follini, Robert Follini, Edenwald Contracting Corp., and on behalf of all other parties defendant.[1]

Lawrence M. Honig, New York City, for defendants Jet Asphalt Corp., Durante Bros. & Sons, Inc., Frank Castiglione, and the Estate of Louis Durante.

Bandler & Kass, New York City (Richard L. Gold, New York City, of counsel), for defendants Anthony Grace & Sons, Inc., Metropolitan Asphalt Corp., Metropolitan Pre-Cast Products, Inc., Anthony Grace, and Richard Grace.

William Esbitt, New York City, for defendants Frank Mascali & Sons, Inc., Frank Mascali, Jr., Gerald Tully, Tully & DiNapoli, Inc., Columbia Asphalt Corp., and Pre-Cast, Inc.

Nicolosi, Robinson & Giaimo, Bayside, N.Y. (Thomas Robinson, Bayside, N.Y., of counsel), for defendant Daniel Garvey.

### Opinion and Order

MALETZ, Senior Judge.[2]

On August 15, 1984, prior to the close of plaintiff's case, the court dismissed this non-jury antitrust action, pursuant to rule 41(b) of the Federal Rules of Civil Procedure, on the grounds that the testimony of plaintiff's alter ego, James A. Comyns,[3] was so incredible as to preclude any possibility of recovery. *See Erie Conduit Corp. v. MAPA*, 102 F.R.D. 877 (E.D.N.Y. 1984). Shortly thereafter, defendants moved for attorneys' fees, costs, expenses, and disbursements, under rules 11 and 54

---

**1.** Messrs. Zinner and Honig were the only defense counsel to submit motion papers; all defense counsel appeared for oral argument.

**2.** Of the United States Court of International Trade, sitting by designation.

**3.** At the time of dismissal, Mr. Comyns was the only witness who had testified at trial.

of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 (1982). The court deferred decision on the motion, pending appellate review of the dismissal. After the Court of Appeals affirmed the dismissal in an unpublished memorandum, No. 84–7873 (2d Cir. Apr. 8, 1985), defendants renewed their motion for the imposition of sanctions on plaintiff Erie Conduit Corporation, on Mr. Comyns, and on Patrick Wall, attorney for plaintiff. For the reasons that follow, the motion is denied.

## I. *Background*

Erie Conduit was a construction company that never recovered from its undercapitalized origins and was dissolved by proclamation of the New York Secretary of State in December 1973. Plaintiff and Mr. Comyns contended that defendants conspired, in violation of the antitrust laws, to drive Erie Conduit out of business. More specifically, plaintiff maintained that defendants formed a "club" that rigged bids for road paving contracts in New York City and that defendants took various steps to assure Erie Conduit's failure after it breached the rules of the club and obtained five paving contracts as low bidder.

According to Mr. Comyns, his careful study of the road paving industry revealed that companies obtaining contracts for New York City jobs were providing for profit margins of 40% or more in their itemized bids, largely by inflating the nominal expenses of many aspects of construction jobs. He determined that he would be able to obtain highly profitable contracts for Erie Conduit by providing for a markup of just under 40%. Erie Conduit was indeed the low bidder on all five projects— Avenue U, 188th Street, Rockaway Avenue, Myrtle Avenue, and Wycoff Avenue— for which it submitted bids. Eventually, Erie Conduit began work on the first four jobs for which it was the low bidder, but was moribund before it could begin the fifth job.

Erie Conduit contended that its demise was attributable to defendants' orchestration of a three-stage effort, which included (1) an attempt to induce plaintiff to withdraw its bids with offers of cash payments and other benefits; (2) an attempt to starve plaintiff by concertedly delaying both the City's awarding of the contracts and Erie Conduit's progress on the jobs, thus delaying the City's progress payments to plaintiff; and (3) an attempt to sabotage plaintiff by harassment and a concerted refusal to deal. Erie Conduit alleged that defendants were particularly successful in the third stage of this effort because most of the defendants who engaged in road paving also owned or controlled asphalt companies, and thus were able to cut off Erie Conduit's supply of vital materials. According to Erie Conduit, defendants' conduct violated the Sherman and Clayton Antitrust Acts and entitled plaintiff to damages and equitable relief.

Plaintiff called Mr. Comyns as its first witness at trial. Following completion of his testimony, which extended over a period of eighteen days, the court determined that Mr. Comyns was unworthy of belief, having found, among other things, that:

(1) Erie Conduit was an alter ego of Mr. Comyns;

(2) Mr. Comyns submitted grossly fraudulent financial statements to bonding companies in order to procure bid bonds and performance and payment bonds on the New York City street paving jobs for which Erie Conduit was the low bidder;

(3) Mr. Comyns forged lien satisfactions and submitted these to New York City in order to receive payments on the paving jobs;

(4) Mr. Comyns bribed employees of the New York City Comptroller's Office to expedite payments;

(5) Mr. Comyns bribed an underwriter employed by International Fidelity Insurance Company to help obtain surety bonds;

(6) Mr. Comyns bribed inspectors employed by New York City;

(7) Mr. Comyns falsely certified to the Empire City Subway Company that Erie Conduit had paid for all labor and materials used on Empire's jobs;

(8) Mr. Comyns paid large sums of money to Erie Conduit's first accountant, Meyer Siegel, to induce the preparation of fraudulent financial statements;

(9) Mr. Comyns made a fraudulent transfer of a backhoe to avoid foreclosure on a chattel mortgage;

(10) Mr. Comyns misrepresented his educational background on papers submitted to New York City;

(11) Mr. Comyns deducted Social Security and other taxes from the wages of Erie Conduit's employees but failed to file reports and pay the moneys so deducted to the United States or New York State; and

(12) Mr. Comyns failed to file returns for, or pay, state and federal income taxes.

As a result of certain of these activities, Mr. Comyns was convicted of mail fraud [4] in the United States District Court for the Southern District of New York and of forgery [5] in the Supreme Court of the State of New York for the County of New York.

The court further found that Mr. Comyns's testimony was replete with material inconsistencies, among which it cited the following:

(1) Mr. Comyns testified at trial that Erie Conduit purchased asphalt for approximately $11.80 per ton through one Roger Rosen, but was later forced to acknowledge that documentary evidence showed the price was actually $15 per ton. [6]

(2) At deposition, Mr. Comyns testified that he had received an undergraduate degree from the University of Maryland, a contention he had to abandon at trial.

(3) Mr. Comyns testified at trial that Erie Conduit's accountant, Meyer Siegel, quit because he was not paid. Later, defendants introduced a series of checks drawn by Mr. Comyns, which demonstrated that Erie Conduit paid Mr. Siegel nearly $20,000 for less than one year of work.

(4) Mr. Comyns testified at trial that Erie Conduit, fearing that the value of its bid bonds would be leaked and that this information would enable competing contractors to determine the amount of Erie Conduit's bid, purchased a bond in the unnecessarily high amount of $70,000 or $72,000 for the Avenue U street paving contract. Documentary evidence confirmed by Mr. Comyns's later testimony showed that the bid bond was in the sum of only $67,000.

(5) At trial, Mr. Comyns testified that he was able to estimate asphalt prices, for purposes of preparing bids for paving contracts, without calling for price quotations, because he had experience running an asphalt plant. Later at the trial, he conceded that he had never run an asphalt plant, but while working for a contractor in Washington, D.C., merely stopped at an asphalt plant each morning to make certain that work had commenced.

(6) Mr. Comyns testified that he resolved an alleged obligation to pay defendant Jet Asphalt Corporation $2,194.23 by demonstrating that this amount represented sales tax, which did not apply in the circumstances. He further testified that he never heard from Jet Asphalt in the matter again. The record later demonstrated, however, that Erie Conduit actually paid Jet Asphalt the full amount. [7]

Moreover, the court was unfavorably impressed with Mr. Comyns's demeanor on

---

**4.** The mail fraud conviction arose from the false statements submitted to bonding companies.

**5.** The forgery conviction arose from the fraudulent lien satisfactions submitted to New York City.

**6.** This discrepancy was important in light of plaintiff's contention that defendants tried to deprive Erie Conduit of asphalt by refusing to sell or by selling at inflated prices. As it developed, the price Erie Conduit paid to Mr. Rosen in an allegedly clandestine deal was comparable to the "inflated" prices that defendants charged.

**7.** Mr. Wall attempted to reconcile these and other difficulties with Mr. Comyns's credibility. His success or failure on any given point could not alter the overall impression of Mr. Comyns's testimony formed by the court.

the witness stand. On many occasions, his memory was purportedly better at trial in 1984 than in depositions that began in 1977 —notwithstanding his admission that he had not reviewed his deposition testimony in preparation for trial and the difficulty he often had recalling his trial testimony of a day or two before. Additionally, Mr. Comyns testified at trial to important occurrences that he never even mentioned in his 2,700 pages of deposition testimony.

It was in light of these and other inconsistencies in Mr. Comyns's testimony that the court found for the record that he was unworthy of belief. The court then permitted plaintiff's counsel to make an extensive offer of proof as to what facts he would propose to establish, to enable the court to determine whether the trial should continue. After completion of this offer, the court stated:

> In view of the offer of proof by counsel for plaintiff at the close of Mr. James A. Comyns's testimony on redirect, it is apparent that plaintiff relies upon this testimony as a necessary component of its causes of action. Absent Mr. Comyns's testimony, plaintiff, of necessity, will be unable to prove certain vital elements of its case. Given Mr. Comyns's lack of credibility, and the court's determination that his testimony is unworthy of belief, it is manifestly clear to the court that plaintiff cannot prove its case, regardless of the possibility that it will prove all those facts referred to in the offer of proof.

102 F.R.D. at 879. Accordingly, the court dismissed the action with prejudice. *Id.* at 880.[8]

## II. *Sanctions*

### A. *The American Rule*

██ Unlike the English practice, "[t]he rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). *Accord Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759, 100 S.Ct. 2455, 2460, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 252 (2d Cir.1985). The courts have carved out exceptions to the American Rule and, for instance, have awarded attorneys' fees "to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). *Accord Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973). *See generally Tedeschi v. Smith Barney, Harris Upman & Co.*, 757 F.2d 465, 466 (2d Cir. 1985) (per curiam).

### B. *Statutory and Rule Developments as Reflected in Case Law*

After the decision in *Roadway Express, Inc. v. Piper*, Congress amended a statute that provided for sanctions, 28 U.S.C. § 1927, "to permit recovery of expenses and attorney's fees in addition to costs." Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 182 (1985). The new version of section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As its language makes clear, section 1927 makes unreasonable and vexatious

---

**8.** The court relied upon *D.P. Apparel Corp. v. Roadway Express, Inc.*, 736 F.2d 1, 3–4 (1st Cir.1984), which held that rule 41(b) of the Federal Rules of Civil Procedure permits the district court to dismiss an action before the close of plaintiff's case in those rare circumstances when it is manifestly clear that plaintiff will be unable to prevail. *See* 102 F.R.D. at 879.

conduct a prerequisite to sanctions. This is not the case under rule 11 of the Federal Rules of Civil Procedure, as amended in 1983, which provides in part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Whereas the former rule 11 "contemplated sanctions only where there was a showing of bad faith," *Eastway Construction Corp.*, at 253 (citing *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) ), the new version "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Id.* at 253. Noting that "subjective good faith no longer provides the safe harbor it once did," *id.*, the Second Circuit summarized its approach to rule 11:

> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Id.* at 254 (footnote omitted) (emphasis in original).

In *Eastway Construction Corp.*, the court of appeals reversed the district court's refusal to impose sanctions because plaintiff's "claim of an antitrust violation by non-competitors, *without any allegation of an antitrust injury*, was destined to fail. Moreover, a competent attorney, after reasonable inquiry, would have had to reach the same conclusion." *Id.* at 254 (emphasis added). The court found it "particularly noteworthy" that, before plaintiff commenced its federal action, it had challenged defendant's policy in state court, without success. *Id.* at 252.

*Eastway Construction*, however, does not purport to repeal the American Rule. The Second Circuit cautioned:

> [W]e do not intend to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. Vital changes have been wrought by those members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself. Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer. But where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated. Such a construction serves to punish only those who would manipulate the federal court system for ends inimicable to those for which it was created.

*Id.* at 254.

### C. *The Law as Applied to the Present Facts*

Against this background, the court must consider the reasonable beliefs that Mr. Wall could have formed from the time he filed his complaint until the conclu-

sion of trial.[9] To some extent, this evaluation is complicated by the court's early dismissal of the action, once counsel's offer of proof made it clear that an essential element of plaintiff's claim—damages [10] —rested inevitably on the discredited testimony of Mr. Comyns.

Before the action was dismissed, however, the court was exposed to some evidence that, independent of Mr. Comyns's credibility, tended to support Erie Conduit's allegations of bid rigging and related activity. Among this evidence was the deposition testimony of defendant Daniel Garvey, New York City's Deputy Commissioner of Highways, to the effect that he believed that bids might have been rigged.[11]

Moreover, in his offer of proof, Mr. Wall advised the court that Roger Rosen would testify that defendant Frank Castiglione, a principal of defendant Jet Asphalt, told Rosen that he would not get any more asphalt because it had been discovered that Rosen was transmitting the asphalt to Erie Conduit. Additionally, certain other defendants, in their depositions, experienced severe losses of memory when asked about sensitive subjects that they feared were covered by conversations secretly tape recorded by Mr. Comyns.[12] According to Mr. Wall's offer of proof, Mr. Castiglione, on

deposition, professed no recollection as to whether he (1) asked Mr. Comyns how much business Erie Conduit hoped to do; (2) told Mr. Comyns that "the boys" could arrange for Erie Conduit to receive $500,-000 per year in Parks Department jobs; (3) told Mr. Comyns that "the boys" wanted Erie Conduit to withdraw its bid on the Avenue U job; and (4) offered Mr. Comyns $25,000 in cash to withdraw the Avenue U bid.

In his offer of proof, Mr. Wall further stated that defendant Charles Follini did not recall whether he had ordered John Durante to remove from a delivery truck material that had been paid for and that was destined for shipment to Erie Conduit. According to Mr. Wall, defendant Richard Grace had testified on deposition that he could not recall whether he told John Durante that cash sales of precast catch basins and castings to Erie Conduit were stopped at the direction of Charles Follini. Mr. Wall also offered to prove that defendant Frank Mascali & Sons, Inc. itemized asphaltic concrete at $30 per ton when it finished fifth out of six in bidding for a street paving job on September 27, 1981, and that within a month, Mascali was the low bidder on another job, for which it

---

9. An attorney's duty to assure the legitimacy of his pleadings is not relieved at the time of filing. [A] belief reasonable when a paper was filed may become unreasonable in light of subsequent developments. Thus, a claim that may be properly asserted and a defense that may be properly maintained when first filed could be rendered untenable by later discovery disclosures. *To persist in claims or defenses beyond a point where they could no longer be considered to be well-grounded in fact may violate the rule.* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 189 (1985) (footnote omitted) (emphasis added). *Cf. Van Berkel v. Fox Farm & Road Machinery,* 581 F.Supp. 1248, 1251 (D.Minn.1984) (attorney violated 28 U.S.C. § 1927 by failing to dismiss lawsuit after learning it was time barred). Similarly, a change in the law may vitiate a formerly viable claim.

10. *See, e.g., Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 529–46, 103 S.Ct. 897, 904–13, 74 L.Ed.2d 723 (1983); *Blue Shield of*

*Virginia v. McCready,* 457 U.S. 465, 472–73 n. 9, 102 S.Ct. 2540, 2545, n. 9, 73 L.Ed.2d 149 (1982) (citing *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.,* 364 U.S. 656, 659–60, 81 S.Ct. 365, 367, 5 L.Ed.2d 358 (1961) (per curiam) ); *Crimpers Promotions, Inc. v. Home Box Office, Inc.,* 724 F.2d 290, 292–97 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *Rios v. Marshall,* 100 F.R.D. 395, 408 (S.D.N.Y.1983); *Indium Corp. of America v. Semi-Alloys, Inc.,* 566 F.Supp. 1344, 1350 (N.D. N.Y.1983).

11. Although the bid rigging was concededly unsuccessful in this case, since Erie Conduit was the successful bidder on the five contracts in question, nevertheless, such activity would be probative of defendants' motives for harming Erie Conduit.

12. Judge Mishler denied defendants' request for access to the tape recordings prior to depositions.

itemized asphaltic concrete at approximately $16 per ton.

These and other elements of plaintiff's offer of proof, while not dispositive, tend to support plaintiff's claim, at least on the issue of liability. Presumably, defendants would challenge the inferences drawn by plaintiff from failures of recollection and other circumstantial evidence, but the court finds Mr. Wall's offer of proof quite relevant to the issue of sanctions. Should Erie Conduit have succeeded in proving even nominal damages—particularly if the court were convinced of the presence of bid rigging and other anti-competitive conduct—it might have had a good claim for equitable relief. *See generally Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Grumman Corp. v. LTV Corp.*, 665 F.2d 10, 16 & n. 4 (2d Cir.1981); *Argus Inc. v. Eastman Kodak Co.*, 552 F.Supp. 589, 599–600 (S.D.N.Y.1982).

When the action was filed, Mr. Wall was largely aware of Mr. Comyns's credibility problems, having represented him with regard to charges of mail fraud and forgery. But even convicted felons may suffer antitrust damages, and it was not unreasonable for Mr. Wall to believe that Erie Conduit could prove such damages, notwithstanding Mr. Comyns's background. Defendants' success in demolishing Mr. Comyns's credibility on cross examination might have been foreseeable, but it was hardly a foregone conclusion. Had trial counsel as experienced as Mr. Wall anticipated the results of Mr. Comyns's cross examination, surely he would have called other witnesses first, as he emphasized in his offer of proof.

It should be underscored that Mr. Wall did not seek to extend the law of antitrust—an attempt that would be protected from rule 11 sanctions so long as it was reasonable—but merely to demonstrate that Erie Conduit was injured within the meaning of the law as it stood. Plaintiff alleged—and reasonably hoped to prove—sufficient facts to sustain an antitrust claim. With the benefit of hindsight, it is apparent that plaintiff faced nearly insuperable obstacles, but the court is satisfied that competent counsel could have pursued the litigation with justifiable expectations of ultimate success.[13]

▮▮▮ Nor is the court persuaded by defendants' argument that, in view of the applicable four-year statute of limitations, 15 U.S.C. § 15b (1982), Mr. Wall should have realized that there was no hope of recovery, since most of the actions complained of occurred more than four years before the action was filed in 1977. Defendants' reliance on *Woodbridge Plastics, Inc. v. Borden, Inc.*, 473 F.Supp. 218 (S.D.N.Y.), *aff'd mem.*, 614 F.2d 1293 (1979), is misplaced, since in that case plaintiff was not harmed by any act of any defendant occurring within the limitations period, *id.* at 221. In this case, Erie Conduit alleged injuries stemming (1) from acts that occurred within the limitations period and (2) from actions that, although outside the limitations period, caused "damages within the limitations period and such damages were too speculative to be recoverable prior thereto." *Argus Inc.*, 552 F.Supp. at 594. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338–42, 91 S.Ct. 795, 806–08, 28 L.Ed.2d 77 (1971). Had plaintiff overcome its fundamental proof problems, it likely would have escaped the effect of the statute of limitations. This conclusion is bolstered by the availability of equitable relief, since it was also possible for the court to find that damages were largely time barred but that an injunction

---

**13.** Plaintiff makes much of the fact that defendants argued to the court of appeals that the action was frivolous and that the Second Circuit nevertheless denied their request for fees, costs, and disbursements, notwithstanding the general rule that costs shall be taxed against an unsuccessful appellant unless otherwise ordered, Fed. R.App.P. 39(a). In plaintiff's words, "there can hardly be a non-frivolous appeal from frivolous litigation." The court finds this argument not particularly persuasive, because the court of appeals might have found that the appeal was substantial insofar as it challenged the district court's authority to dismiss the action prior to the close of plaintiff's case, without in any way crediting the colorability of plaintiff's claim.

against the defendants' alleged conduct was appropriate.

▇ Under these circumstances, imposition of sanctions would have a uniquely chilling effect on potentially meritorious actions and would go far beyond the goals of rule 11. Obviously, with perfect hindsight, the conclusion of every litigation is in some sense predictable, but the American Rule provides that courts shall remain available to resolve disputes and that loss of the litigation in chief is generally penalty enough for the party that does not prevail. Rule 11 makes an exception to the American Rule for pleadings that are not well grounded in fact and law or that are interposed for an improper purpose. The court finds that neither criterion has been met in this action. Having so found, the court finds, *a fortiori*, that sanctions under 28 U.S.C. § 1927 are inappropriate, since plaintiff has not acted "unreasonably and vexatiously."

▇ As to defendants' request for "sanctions" under rule 54(d) of the Federal Rules of Civil Procedure, the rule provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." The court sees no reason to direct otherwise, and nothing in this opinion should be construed as limiting defendants' right to recover taxable costs as specified in 28 U.S.C. § 1920 (1982).[14] In this connection, defendants shall be entitled to recover taxable costs from the fund being held by the Clerk as security for costs, and the Clerk is hereby directed to release the appropriate sum from such fund upon defendants' filing of a verified bill of costs, pursuant to *id.* § 1924.

▇ Finally, the court denies defendants' motion for an order referring Mr. Comyns's trial testimony to the office of the United States Attorney for proceedings consistent with the perjury statute, 18 U.S.C. § 1621 (1982). Counsel for defendants remain free to send the United States

Attorney any communication they deem appropriate.

### III. *Conclusion*

For the foregoing reasons, defendants' motion for sanctions is denied. Their motion to recover taxable costs is granted. Their motion for an order referring Mr. Comyns's testimony to the office of the United States Attorney is denied.

SO ORDERED.

---

14. Indeed, the judgment entered in the office of the Clerk on August 28, 1984 provided that de-

fendants would recover costs from plaintiff.