**AMERICAN STATE BANK,
etc., Plaintiff,**

v.

**Joseph A. PACE, et al., Defendants.**

**No. CV 85–0–599.**

United States District Court,
D. Nebraska.

Oct. 28, 1987.

Robert V. Dwyer, Jr., Omaha, Neb., and C.E. Light, for plaintiff American State Bank.

Thomas F. Flaherty and Warren S. Zweiback, Omaha, Neb., for defendant American Nat. Bank.

David S. Houghton, Omaha, Neb., for third-party defendant John M. Shonsey.

## MEMORANDUM AND ORDER

RICHARD G. KOPF, United States Magistrate.

This case is presently before the Magistrate to consider the plaintiff's Motion for New Trial (filing 187), the defendant's and third party defendant's Motions for Sanctions under Rule 11 (filings 191 and 196), and plaintiff's Motion to Retax Costs (filing 200). Briefs were submitted. Oral argu-

ment and evidentiary hearing was held with regard to the Motion for New Trial and the Motions for Sanctions.

## I.

## MOTION FOR NEW TRIAL

The Magistrate has considered the parties' briefs and arguments. The Magistrate concludes that the findings of fact and conclusions of law (filing 193) properly set forth the facts and law. Accordingly, the Magistrate concludes that the plaintiff's Motion for New Trial should be denied.

## II.

## MOTIONS FOR SANCTIONS UNDER RULE 11

The findings of fact and conclusions of law (filing 193) set forth the facts and law. An undisputed fact is that John M. Shonsey, the third-party defendant, was a dual agent for both the plaintiff and defendant banks (filing 150, at 11; filing 193, at 16). Shonsey therefore had the following duty:

to act with fairness to each and to disclose to each all facts which he knows or should know would reasonably affect the judgment of each in permitting such dual agency, except as to a principal who has manifested that he knows such facts or does not care to now them.

Restatement (Second) of Agency § 392 (1958).

The issue in this case became whether Mr. James Deam, the president of the plaintiff, American State Bank, knew or did not care to know pertinent facts important to the loan transaction ("Pace loan") known by Shonsey, the dual agent for the plaintiff and defendant banks. (filing 193, at 61, 63). At trial, the plaintiff agreed that the Restatement (Second) of Agency applied. (filing 193, at 61). The moving parties, arguing for sanctions, attorney's fees, miscellaneous nonchargeable court costs, and reasonable expenses, contend, among other points, that at or about the time of the pretrial conference in this case the plaintiff and two attorneys for the plaintiff had to know by virtue of two previous depositions that Deam, the president of the plaintiff bank, would in essence testify that he did

not care to know the facts from or about the dual agent. Consequently, the moving parties contend that the plaintiff and its counsel could not, on an objectively reasonable basis, continue with the suit knowing that plaintiff's president would testify in a manner that required judgment to be entered against the plaintiff.

Federal Rule of Civil Procedure 11 provides in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is ... *warranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law.... If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which *may* include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (emphasis added).

■ The purposes underlying the adoption of Rule 11 are to deter plaintiffs from filing actions lacking factual or legal support and to save innocent parties and the courts from dealing with frivolous lawsuits. *Kurkowski v. Volcker,* 819 F.2d 201, 203–204 (8th Cir.1987). Neglecting to have an adequate legal basis for a signed paper constitutes a violation of Rule 11. 2A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 11.02[2] (1987); Schwarzer, *Sanctions Under the New Federal Rule 11—a Closer Look,* 104 F.R.D. 181, 186, 189 (1985). The phrase "other paper," used in Rule 11, has been interpreted to mean "every paper filed in court," Larimore, *Judicial Sanctions under Federal Rule 11,* For the Defense 17 (Mar.

1987), and therefore includes the Order on Final Pretrial Conference ("Pretrial Order") (filing 150), signed on June 30, 1987 by counsel for all parties to the present action.

The court must inquire into the reasonable belief which the plaintiff's attorneys could have formed from the time previous to signing the Pretrial Order through the end of trial. Fed.R.Civ.P. 11 advisory committee's note. *See Erie Conduit Corp. v. Metropolitan Asphalt Paving Ass'n,* 106 F.R.D. 451, 456–57 (E.D.N.Y.1985) (extending the period of the court's inquiry from the time of the filing of the complaint through the end of trial). Rule 11 now imposes an affirmative duty requiring an attorney, before filing of the paper in question, to inquire into both the applicable facts and law. Fed.R.Civ.P. 11 advisory committee's note. Mistaken judgment, ignorance of the law, or personal belief with regard to what the law should be does not provide the attorney with an excuse or defense. *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 253 (2d Cir.1985); *Eastway Constr. Corp. v. New York,* 637 F.Supp. 558, 567 (E.D.N.Y.1986); Larimore, For the Defense at 22, 27. *See Golden Eagle Distributing Corp. v. Burroughs Corp,* 801 F.2d 1531, 1542 (9th Cir.1986) (stating that "[a] lawyer should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless").

It must be stressed that the standard to be employed by the attorney in investigating the facts and law is objective, frequently stated as one of "reasonableness under the circumstances." Schwarzer, 104 F.R.D. at 191; Larimore, For the Defense at 17, 20. Relevant factors constituting a reasonable inquiry under the objective standard include: the time available to the signing attorney for investigation, and whether the paper was based on a plausible view of the law. Fed.R.Civ.P. 11 advisory committee's note.

■ In the present action, the court concludes that plaintiff's counsel failed to make a reasonable inquiry into the applicable facts and law with regard to the applicability of the Restatement (Second) of Agency. A thorough review of the record and evidence before the court reveals that the only possible conclusion is that Deam did not know or care to know the pertinent facts known by Shonsey. Following is one of the issues stated in the Pretrial Order, indicating that counsel was aware by the time of the signing of that Order of the relevance of the law of agency to the action: "If John M. Shonsey was a dual agent acting for both American National Bank and American State Bank in connection with the transaction evidenced by the Loan Agreement, is his knowledge imputed to both his principals?" (filing 150, at 11).

Below are representative excerpts from the depositions taken of Deam, significant in that they indicate Deam's lack of interest in what Shonsey knew with regard to the Pace loan. First, an excerpt from the first deposition taken of Deam on November 21, 1985:

A: If Jack said [a loan that size] was okay, it was okay.

. . . .

A: Bear in mind I had known [Shonsey] for over 30 years, and I had participated in loans, participations of his, before I ever went to Yankton. And Jack's word was always absolutely gilt-edge. He never lied to me.

. . . .

Q: You always found him to be an honest man?

A: I have. He never lied to me in his life.

Q: [Y]ou knew you had a duty to investigate this loan, didn't you?

A: Right.

Q: Okay.

A: I was relying on his judgment.

Q: Well, but you looked at the land yourself?

A: I looked at it, and I wanted to know about the appraisal.

. . . .

Q: Did you take a look at the appraisal?

A: No.

Q: Did you ask to see it?

A: [Shonsey] said he was going to get it and send it up. And I guess we finally got it.

. . . .

Q: Did you form any opinion in your own mind as to what [three pieces of Colorado land] were worth?

. . . .

A: I was depending entirely, relying entirely, upon [Shonsey's] judgment.

. . . .

Q: What information did you personally review in making the decision whether or not to participate in the loan?

A: I relied entirely upon Jack Shonsey.

. . . .

Q: To your knowledge, has Mr. Shonsey ever made any misrepresentation to you or to American State Bank with regard to the Pace loan?

A: The only misrepresentation is, it isn't paid.

Q: Okay. But, as far as you know, he has never lied to you or the bank about it?

A: No.

(Def.'s Exh. 8, at 18:5, 19:1–4, 19:10–20, 19:22 through 20:1, 21:9–13, 36:20–23 and 58:18–24). In the second deposition of Deam taken on August 27, 1986, Deam testified as follows:

Q: Did you ever read the appraisals?

A: I never read the appraisal.

Q: None?

A: No.

Q: Not a single page of the appraisal?

A: No. Jack said they were absolutely okay and I took Jack's word for it. In this business you take the other banker's word and if he ever—he either keeps it or he isn't a banker.

(Def.'s Exh. 9, at 49:15–23).

Consistent with his deposition testimony, Deam testified at trial on August 31, 1987 as follows:

A: And as far as you know, Jack's never been untruthful to you?

A: No.

Q: Never lied to you?

A: No, sir.

Q: Okay. And you believe that in this case, as in all the others, he did what he thought was right?

A: He—to me, he thought he was doing the right thing.

(Def.'s Exh. 20, at 26:17–25).

Deam further testified:

Q: And you made no judgment?

A: No. This is—this is Jack's judgment. That's the way we worked. When I made a participation, it was my responsibility and I had to take care of it. Jack operated the same way. When he made a loan, it was his chore and he took care of his end.

Q: Mr. Deam, are you telling us, again, that the decision Jack made was not a recommendation but that it was a mandate to the bank, your bank?

A: As far as I was concerned, it was an order.

Q: Okay. And you knew he made it to the best of his ability as he had in the past?

A: Right.

. . . .

Q: What you're saying is that it didn't really matter to you; you were just relying on Jack as a good banker?

A: I trusted Jack and he was a good banker.

(Def.'s Exh. 20, at 30:3–15 and 38:4–7).

Additionally, below are excerpts from the parties' arguments for and against the defendant's motion to dismiss, "Counsel" referring to counsel for the plaintiff:

Court: Mr. Deam didn't even testify what you claim that was not disclosed to him was material to him. It wouldn't have made any difference to him.

Counsel: I understand his testimony, Your Honor.

Court: Have I mischaracterized his testimony?

Counsel: I don't believe so. . . .

. . . .

Counsel: And I recognize that [Deam] does not testify that he would have done this or he would have done that if these facts were laid out for him.

Court: Or that he even cared, I guess.

Counsel: Or that he even cared. That's true.

Court: Is it your contention that Mr. Shonsey was acting as a dual agent?

Counsel: Yes, sir.

. . . .

Counsel: The Plaintiff's theory in this case is that Jack Shonsey was acting as a dual agent. In the course of his activities as a dual agent, he participated in a transaction which was to the benefit of the American National Bank and to the detriment of the American State Bank.

. . . .

Court: I presume you think the [R]estatement of [A]gency is applicable in this case?

Counsel: Yes, sir.

. . . .

Court: [D]idn't Deam tell us that he did not care to know the facts? I mean isn't that what he testified to?

Counsel: Absolutely no question about it, Your Honor

. . . .

(Def.'s Exh. 21, at 40:1–8, 48:2–8, 48:21–23, 60:6–11, 61:12–14 and 63:16–19).

A comparison of Deam's testimony from the two depositions and the trial reveals that his testimony as a whole was unequivocally similar in all instances. In all instances, Deam in essence repeatedly stated that he placed great trust in Shonsey, that he relied on him heavily in the past and also with regard to the Pace loan, and that he did not care to know the facts known by Shonsey with regard to the Pace loan. No conflicting statements can be found in any of the evidence before the court.

As the complaint was filed on June 14, 1985, the two depositions of Deam were taken on November 21, 1985 and August 27, 1986, the Pretrial Order was signed on June 30, 1987, and trial was not until August of 1987, certainly more than adequate time existed for counsel to investigate the factual and legal issues involved in the case. Yet, plaintiff's counsel never explicitly questioned Deam with regard to the pertinent issues under the Restatement (Second) of Agency. Counsel do say that they thought Deam would testify at trial that Shonsey "put one over" on Deam with respect to the Pace loan; but, Deam did not so testify. Deam apparently made that statement to plaintiff's counsel during trial preparation shortly before testifying.

The court, however, does not find that counsel's reliance on the "put one over" expected testimony was objectively reasonable. First, as shown above, Deam's deposition testimony is entirely consistent and closely parallels his trial testimony in that Deam did not care to know the facts known by Shonsey about the Pace loan. Second, the statement that Shonsey "put one over" on Deam is extremely ambiguous, as the statement does not on its face relate to the issue of whether Deam cared to know the applicable facts. The ambiguity of such an unsworn statement made on one occasion affords no objective basis for plaintiff's counsel to disregard Deam's prior consistent sworn testimony. Last, even if the statement had been made by Deam at trial, the weight of Deam's prior adverse testimony would undoubtedly overcome the weight of such an ambiguous one time statement.

Therefore, given the circumstances involved, namely the knowledge of plaintiff's counsel of the evidence, especially the two depositions of Deam, together with the expectation that counsel reasonably inquire into the applicable law, the court concludes that under the objective standard plaintiff's counsel should have recognized, beginning on or even before the date of the signing of the Pretrial Order, that the Order could not have been signed based on a plausible view of the law, that they had no viable cause of action under existing law, and that no possibility existed for a good faith argument for the extension, modification, or reversal of existing law, leading to a Rule 11 violation.

As the plaintiff's attorneys have therefore violated Rule 11, the imposition of one or more sanctions becomes necessary. *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir.1987). (There is no evidence that the plaintiff did anything other than rely on its counsel.) Rule 11 itself provides that if a paper is signed in violation of the Rule, the court "*shall* impose an

appropriate sanction." Fed.R.Civ.P. 11 (emphasis added). The court is allowed wide discretion in determining which sanction(s) are appropriate, including the possible awarding of fees. *See* Fed.R.Civ.P. 11 advisory committee's note; Larimore, For the Defense at 26. *See also* Fed.R.Civ.P. 11 (emphasis added) (providing that an appropriate sanction *"may* include an order to pay ... expenses"). The following factors are among those which have been considered in determining appropriate sanctions in a given situation:

a) the cost of the Rule 11 violation to the party seeking sanctions, and b) mitigating factors such as (i) whether the client and lawyer believed they were correct in taking the course they did; (ii) whether there was vindictiveness or a desire to punish an opponent; (iii) whether the lawyer is a neophyte who needs education, a repeat offender, or a person of standing at the bar whose actions have therefore been ethical and in the high tradition of the bar; (iv) the ability to pay; (v) the need for compensation; (vi) the degree of frivolousness; and (vii) the dangers in chilling the particular kind of litigation involved.

*Eastway Constr. Corp.,* 637 F.Supp. at 571. Following is a discussion of the above points as they relate to the present action.

### (a) *Cost of a Rule 11 violation*

The method used in calculating attorney's fees as one component of the cost to a party of a Rule 11 violation is a calculation of the number of hours spent as a result of the violation multiplied by a market based reasonable hourly attorney's fee. *Id.* In the present case, counsel for the defendant bank and third-party defendant have submitted affidavits listing the costs involved as a result of the Rule 11 violation, including what appear to be reasonable attorney's fees, given the attorneys' experience, totaling $29,907.42 for counsel for the defendant bank (Def.'s Exhs. 16 and 17) and $15,540.13 for counsel for the third party defendant (Def.'s Exh. 27). (The reasonableness of the fees was not disputed.)

### (b) *Mitigating factors*

#### (i) Plaintiff's and counsel's belief that they were correct

As discussed above, although counsel's assumption was objectively unreasonable, at this stage of the analysis where the court determines which sanctions to impose, the focus of the court is on the *subjective* belief of counsel. *Id.* at 572. It is the court's opinion that the plaintiff and plaintiff's counsel sincerely believed that they were correct in taking the course which they elected to take. Indeed, plaintiff's counsel maintains that the court continues to be wrong. Both attorneys for the plaintiff testified at the evidentiary hearing on the Motion that they thought that Deam would testify differently at trial. There is also no doubt that counsel spent significant time and effort preparing the case for trial. Also, both counsel spent numerous hours litigating matters related to these Motions for Sanctions, and hired counsel to represent them in defense against those Motions. Finally, plaintiff's counsel rejected two substantial offers of settlement made prior to trial, again indicating the seriousness with which they approached the action. In conclusion, the serious manner in which plaintiff's counsel approached this matter suggests the imposition of mild sanctions.

#### (ii) Vindictiveness or a desire to punish an opponent

The willfulness of plaintiff's counsel in violating Rule 11 is important in determining the sanctions to be imposed. The following factors are important in determining whether counsel's conduct was willful: whether counsel was aware that the filing was frivolous, whether the filing was used to harass or punish the opposing party, and whether counsel unnecessarily increased the cost of litigating the filing. *Id.* at 573.

No evidence is present which indicates that counsel knew that the filing in this case, the Pretrial Order, was frivolous or that counsel intended to or did in fact use the Order to harass or punish the parties moving for sanctions. The hours spent researching and defending their claim(s),

together with the discussion under mitigating factor (i) with regard to counsel's subjective feelings with regard to the seriousness of their claim support this conclusion.

Although certainly it can be said that plaintiff's counsel unnecessarily increased the cost of further litigating the matter subsequent to the signing and filing of the Order, the court finds, in reviewing the record and facts as required, Fed.R.Civ.P. 11 advisory committee's note, that the parties moving for sanctions failed to take certain mitigating steps. Several facts indicate that the moving parties continued to view the action, up until trial, as one with merit rather than one undertaken with improper motives such as vindictiveness or a desire to punish the opposing party. For example, no motions for summary judgment were made. Also, the defendant bank made two substantial offers of settlement to the plaintiff, one on June 3, 1987, and another just before the commencement of trial (Def.'s Exh. 18, at 3; Def.'s Exh. 18, Exh. A). The third party defendant joined in the last settlement offer. Last, at no point in the litigation until the Motion for New Trial was plaintiff's counsel notified of the possibility of a claim of a Rule 11 violation. If a party believes that sanctions are warranted, prompt notice should be given to the allegedly offending party. *Donaldson v. Clark*, 819 F.2d 1551, 1560 (11th Cir.1987).

■ In sum, the court is unconvinced that plaintiff's counsel was vindictive or desired to punish the opposing parties in any manner, pointing to the imposition of light sanctions.

### (iii) Need for discipline

Both of the plaintiff's attorneys are experienced, competent, professional and thoroughly honest. One attorney served as a law clerk to a United States district judge beginning in 1959, and subsequently has been engaged in the practice of law since 1960. He has been admitted to practice in state and federal courts both in Nebraska and South Dakota, the Eighth Circuit Court of Appeals, and in the United States Supreme Court. His practice can be summarized as corporate. (Pl.'s Exh. 30). The other attorney has practiced law for over twenty years and enjoys an excellent reputation, particularly regarding commercial litigation. By the defendant's and third-party defendant's own frank statements, both attorneys are ethical in their practice. Neither counsel has had a Rule 11 violation in the past. Moreover, the court stated the following at the conclusion of the arguments for and against the Motion to Dismiss: "Let me say I appreciate the very candid and competent way that this case was presented by all parties.... [L]et me say that American State Bank was very ably represented." (Def.'s Exh. 21, at 89:1–5). Therefore, the experience, background and reputations of both counsel in relation to the purpose of Rule 11 point toward the imposition of light sanctions.

### (iv) Ability to pay

Without a request by plaintiff's counsel for a hearing for the purpose of presenting evidence indicating financial hardship, *id.* at 583, or without evidence offered at the hearing on the Motion with regard to financial hardship of either counsel, the court need not consider their financial status at this point. *See Eastway Constr. Corp.*, 637 F.Supp. at 573.

### (v) Need for compensation

The moving parties have not shown the court that the suit has financially unduly burdened their clients, despite the evidence indicating the costs and attorneys' fees generated by their defense of the plaintiff's claim. (Def.'s Exhs. 16, 17, 27). Also, sanctions are to be viewed as educating future conduct, not primarily as compensation to the moving parties. Schwarzer, 104 F.R.D. at 185. Therefore, this consideration points to the imposition of light sanctions.

### (vi) Degree of frivolousness

In accordance with the above discussion of mitigating factors (i) and (ii), the court is of the opinion that this case was not viewed as frivolous by any party until the case was dismissed. Additionally, the court does not view the case as "extremely" frivolous,

given that Rule 11 is not intended to deter "novel legal arguments or cases of first impression," *Donaldson,* 819 F.2d at 1561, indicating that lighter sanctions are appropriate. Therefore, this factor points to the imposition of light sanctions.

> (vii) Dangers in chilling this type of litigation

A comparison of the present case with that of *Erie Conduit Corp. v. Metropolitan Asphalt Paving Ass'n,* 106 F.R.D. 451 (E.D.N.Y.1985) is useful in illustrating the premise that sanctions should only be imposed upon the demolishing of a party's witness on the stand when that party previously had an objectively reasonable basis to know that, due to statements previously made by that witness, that the witness would offer similar statements against that party's case and that, therefore, the party no longer had a case which could be proved by the witness' testimony. In *Erie Conduit,* the court dismissed the antitrust action with prejudice upon determining that the plaintiff's first witness lacked credibility on several grounds. *Id.* at 452–55. In determining whether to impose sanctions, the court concluded that sanctions were not to be imposed, stating that the imposition of sanctions under such circumstances would tend to chill a potentially meritorious action. *Id.* at 459.

*Erie Conduit,* however, is distinguishable from the present action in several respects. First, the matter in *Erie Conduit* with regard to the witness was a credibility issue, in contrast to the substantive issue for which Deam's testimony in the present action was important. Second, in *Erie Conduit,* no objective measure, such as the two depositions in the present action, existed which would have provided counsel with sufficient warning as to the subsequent action of the court. Third, despite the knowledge of plaintiff's counsel of the witness' credibility problems at the time of the filing of the complaint, various elements of the plaintiffs offer of proof still supported the plaintiff's case, and it was not unreasonable that the plaintiff could prove damages. *Id.* at 458. In contrast, the plaintiff's case in the present

action was fatally weak, Deam's testimony being critical.

Nevertheless, the present action was deemed not to be frivolous by the parties on a subjective basis, as stated under mitigating factor (vi) above. And, upon considering the circumstances, as the court finds this action not extremely frivolous or at the most on the borderline of being frivolous, while the analysis of this factor points to the imposition of sanctions, those sanctions should be light. *Eastway Constr. Corp.,* 637 F.Supp. at 574.

The court recognizes that monetary sanctions represent an important tool available to a court upon a clear violation of Rule 11. *See Kurkowski,* at 204; *United States v. Articles of Drug,* 601 F.Supp. 392, 398 (D.Neb.1984). The court also recognizes the general principal that the least severe sanction(s) should be imposed, in light of the above analysis and the effect of sanctions on an attorney's reputation and career. *Eastway Constr. Corp.,* 637 F.Supp. at 565; Schwarzer, 104 F.R.D. at 201. After careful analysis of the facts, record and evidence in this action, the plaintiff's attorneys are hereby formally cautioned in the future to be conscious of and strictly abide by the provisions of Rule 11.

In issuing this caution, the Order serves the primary purpose of Rule 11 of educating counsel as to their obligations both to the litigants and the court. Larimore, For the Defense at 27. The court views the present violation as a result of overzealousness of counsel in the preparation of their case, rather than as an egregious violation of Rule 11. (There is no significant purpose to be served by imposing sanctions against the plaintiff as opposed to counsel, since the evidence is clear that the plaintiff relied upon counsel. The other reasons for sanctions have been considered; even if established, the Magistrate would not have imposed different sanctions.) Furthermore, the moving parties did nothing to mitigate the impact of the violation or to notify the plaintiff's counsel of the possibility of the violation. Also, there is no con-

tention that plaintiff's counsel are either unethical or incompetent.

This caution is consistent with a similar sanction in the form of a reprimand issued in *Allen v. Faragasso*, 585 F.Supp. 1114, 1119 (N.D.Cal.1984), in which the complaint was found to have had no factual or legal basis, and the offending party did not make a good faith argument for extension, modification or reversal of the law. The *Allen* court found that the infractions were due to excessive zeal rather than an improper purpose. *Id.*

The Magistrate therefore grants the defendants' and third-party defendant's Motions for Sanctions under Rule 11, issuing a formal caution that plaintiff's attorneys should in the future be conscious of and strictly abide by Rule 11.

## III.

### MOTION TO RETAX COSTS

■ The plaintiff moves to retax costs pursuant to Local Rule of Practice 34 (filing 200), claiming that the Clerk of the Court erred in taxing any costs in favor of the third-party defendant Shonsey against the plaintiff. Plaintiff claims that there is no authority to tax costs in favor of the third-party defendant against the plaintiff, but that if such authority exists the costs which were taxed by the Clerk were not proper expenses to be taxed as costs.

First, plaintiff asserts that the third-party defendant Shonsey is not entitled to costs recoverable against plaintiff because plaintiff did not sue Shonsey in this action. The plaintiff relies upon *Tejas Development Co. v. McGough Bros.*, 167 F.2d 268 (5th Cir.1948). In that case, the United States Court of Appeals for the Fifth Circuit held that costs on appeal should not be taxed to the plaintiff for costs incurred by the third-party defendant in prosecuting a successful appeal. *Id.* at 269. The *Tejas* case regards taxation of costs in an appellate situation, but at first blush the reasoning of the case appears applicable here.

However, after more careful scrutiny, *Tejas* is not controlling. *Tejas* involved a situation where the plaintiff sued the defendant, and the defendant filed a third-party suit against a third-party defendant;

plaintiff prevailed against defendant and defendant prevailed against third-party defendant. Thereafter, there was a successful appeal prosecuted by the third-party defendant, and the appellate court held that the judgment for the plaintiff should be reversed. *Id.* at 268. The *Tejas* court held that as to the litigated action between the defendant and third-party defendant, plaintiff should not be liable for such appellate costs because the plaintiff was not a party to the dispute between the defendant and third-party defendant. *Id.* at 269. Here, in contrast, costs are assessed for assertion of a defense by the third-party defendant against the plaintiff, having nothing to do with respect to the action between the defendant and the third-party defendant. The *Tejas* court was careful to point out that the plaintiff had no concern at all regarding much of the pleadings, proceedings, and evidence which gave rise to the taxation of costs in that case, *id.;* in this matter, the court is confronted with the opposite situation, particularly in that it was the third-party defendant as well as the defendant who vigorously contested the claim of the plaintiff against the defendant.

Thus, the third-party defendant's costs here were associated with a proceeding between the plaintiff and defendant. The third-party defendant in this regard occupies the same adversary position with respect to the plaintiff as does the defendant, and may assert defenses against the plaintiff in the same manner as the defendant may assert defenses against the plaintiff. Fed.R.Civ.P. 14(a); *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 744 (5th Cir. 1980). If, as Fed.R.Civ.P. 14(a) explicitly provides, a third-party defendant may assert against the plaintiff any defense which the defendant has to the plaintiff's claim, the third-party defendant is a "prevailing party" for taxation of costs purposes pursuant to Fed.R.Civ.P. 54(d). This is especially true where plaintiff's action is dismissed at the end of plaintiff's case in chief where a third-party defendant vigorously defended the actions of the defendant, as was the case here.

It is not inequitable to award costs in favor of a third-party defendant and

against the plaintiff in the particular circumstances of this case. As indicated previously, the theory of the plaintiff's case revolved almost exclusively around the conduct of the third-party defendant; having chosen not to name the third-party defendant as a defendant, when plaintiff commenced suit against the defendant on a "dual agency" theory, plaintiff must have known of the right of the defendant bank to bring a third-party action against Shonsey, the so-called dual agent. Furthermore, since the defendant was never required to present evidence against the third-party defendant it would be anomalous to award costs in favor of Shonsey as against the defendant, as opposed to the plaintiff, where the actions of the third-party defendant were directed primarily at asserting defenses against the plaintiff's claim.

In this circumstance it was the plaintiff's complaint, predicated totally upon the actions of the third-party defendant, which permitted the defendant to bring a third-party action against the third-party defendant on the theory that Shonsey was or might be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. Fed.R. Civ.P. 14. This case was not an action where the liability of the third-party defendant to the defendant was distinguishable in any significant degree from the alleged liability of the defendant to the plaintiff. Consequently, the court must find that taxation of costs under these circumstances are justified.

Second, plaintiff objects to the imposition of costs for copies of depositions relying upon, among other cases, *Davenport Grain Co. v. Michigan Millers Mutual Insurance Company*, 125 F.R.D. 157 (D.Neb. 1987). The *Davenport* case is simply not applicable inasmuch as Judge Urbom held that photocopies, not explicitly described as copies of depositions, could not be included as costs with respect to the award of attorney's fees under the provisions of a Nebraska statute. *Id.* at 159.

■ In this case there is an affidavit of counsel for the third-party defendant claiming that the expenses incurred were neces-

sary for use in the case within the meaning of 28 U.S.C. § 1920. There has been no specific objection that any of the depositions were improperly taken or unduly prolonged, and therefore, the court is permitted to assume that the depositions, which form the predicate for the costs, were necessary. *Hollenbeck v. Falstaff Brewing Corp.*, 605 F.Supp. 421, 439 (E.D.Mo.1984), *aff'd*, 780 F.2d 20 (8th Cir.1985).

Moreover, in reviewing the names of the deponents, the court concludes that the third-party defendant reasonably needed the deposition copies for the defense of the action. *Ramos v. Lamm*, 713 F.2d 546, 560 (10th Cir.1983) (stating that when copies of depositions are reasonably necessary for litigation, costs of the copies are allowed under 28 U.S.C. § 1920(4)). The need for copies of the depositions in this case was increased by virtue of the provisions of the Local Rules of Practice of this court which specifically provide that depositions shall not be filed with the court until they are needed for trial or resolution of a motion or upon order of the court. Local Rule of Practice 9(B). Thus, it was not a simple matter for counsel for the third-party defendant to check out the deposition and make notes, as opposed to securing a copy. (There is no claim that the depositions principally pertained to an unrelated matter between third-party plaintiff and third-party defendant in which plaintiff had no interest.)

Accordingly, the Motion to Retax Costs (filing 200) is denied.

IT IS ORDERED THAT:

1. The Motion for New Trial (filing 187) is denied;

2. The Motions for Sanctions under Rule 11 (filings 191 and 196) are granted in part, and the attorneys for the plaintiff are formally cautioned to carefully abide by the provisions of Rule 11 in the future; otherwise, the Motions are denied.